**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| JANE DOE and CHARLES BOONE, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) C.A. No. 10-473-LPS |
| WILMINGTON HOUSING AUTHORITY | ) |
| and FREDERICK S. PURNELL, SR., in his | ) **JURY TRIAL DEMANDED** |
| official capacity as executive director of the | ) |
| Wilmington Housing Authority, | ) |
| | ) |
| Defendants. | ) |

**DEFENDANTS' OPENING BRIEF
IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

Barry M. Willoughby, Esquire (Bar I.D. 1016)
Lauren E. Moak, Esquire (Bar I.D. 5366)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Brandywine Building, 17th Floor
1000 West Street
P.O. Box 391
Wilmington, DE  19899-0391
Telephone: (302) 571-6666; (302) 576-3255
Facsimile: (302) 576-3345; (302) 576-3750
E-mail:  bwilloughby@ycst.com; lmoak@ycst.com

*Attorneys for Defendants Wilmington Housing Authority
and Frederick S. Purnell, Sr.*

Dated:  February 21, 2011

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................................... iv

NATURE AND STAGE OF THE PROCEEDINGS ...........................................................1

SUMMARY OF THE ARGUMENT ..................................................................................1

STATEMENT OF THE FACTS .........................................................................................2

ARGUMENT ......................................................................................................................6

I.     DEFENDANTS HAVE MADE THE REQUIRED SHOWING FOR
AN AWARD OF SUMMARY JUDGMENT IN THEIR FAVOR................................6

II.    PLAINTIFFS LACK STANDING TO BRING THIS SUIT .........................................7

III.   COUNT ONE, ALLEGING A VIOLATION OF THE SECOND
AMENDMENT, SHOULD BE DISMISSED BECAUSE THE NEW
POLICY IS CONSTITUTIONAL UNDER ESTABLISHED THIRD
CIRCUIT CASE LAW ...............................................................................................10

    A.   The Third Circuit Has Held That Intermediate Scrutiny Is The
Appropriate Standard Of Review In Second Amendment Cases .........................10

    B.   The New Policy Does Not Impose A Burden On Conduct Falling
Within The Scope Of The Second Amendment's Guarantee ...............................11

    C.   The New Policy Is Narrowly Tailored To Effectuate A Substantial
Governmental Interest, And Is Therefore Constitutional ....................................13

IV.   COUNT TWO SHOULD BE DISMISSED BECAUSE PLAINTIFFS
CANNOT PROVE A VIOLATION OF THE DELAWARE STATE
CONSTITUTION .......................................................................................................16

V.    COUNTS THREE, FOUR, AND FIVE SHOULD BE DISMISSED
BECAUSE THEY FAIL TO STATE INDEPENDENT CAUSES OF
ACTION ......................................................................................................................17

    A.   Count Three Fails To State An Independent Cause Of Action, And
Further Fails Because The Preemption Statutes Do Not Apply to
Defendants ...........................................................................................................17

    B.   Count Four Should Be Dismissed Because Title 31, Establishing
WHA, Does Not Provide A Cause Of Action For Exceeding Scope
Of Authority.........................................................................................................19

    C.   Count Five, Seeking Declaratory Relief, Should Be Dismissed
Because 10 Del. C. § 6501 Does Not Provide An Independent
Cause of Action....................................................................................................19

CONCLUSION..........................................................................................................................20

# TABLE OF AUTHORITIES

**Cases**

A.W. Fin. Servs., S.A. v. Empire Res., Inc.,
981 A.2d 1114 (Del. 2009) ........................................................................ 17

AstraZeneca Pharms. LP v. Mylan Pharms. Inc.,
719 F. Supp. 2d 388 (D. Del. 2010) ........................................................... 7

Cantinca v. Fontana,
884 A.2d 468 (Del. 2005) .......................................................................... 18

Connick v. Myers,
461 U.S. 138 (1983) ................................................................................... 14

Dickerson v. State,
975 A.2d 791 (Del. 2009) .......................................................................... 16

District of Columbia v. Heller,
544 U.S. 570 (2008) ........................................................................... passim

Garcetti v. Ceballos,
547 U.S. 410 (2006) ................................................................................... 14

In re: Application of McIntyre,
552 A.2d 500 (Del. Super. Ct. 1988) ........................................................ 17

Int'l Soc'y for Krishna Consciousness v. Lee,
505 U.S. 672 (1992) ................................................................................... 15

Lozano v. City of Hazleton,
620 F.3d 170 (3d Cir. 2010) ........................................................................ 7

Lujan v. Defenders of Wildlife,
504 U.S. 555 (1992) ..................................................................................... 7

McDonald v. City of Chicago,
130 S. Ct. 3020 (2010) ....................................................................... passim

Motors of N. Am. v. Wilmington,
498 A.2d 1062 (Del. 1985) ........................................................................ 18

O'Connor v. Ortega,
480 U.S. 709 (1987) ................................................................................... 14

Peruta v. County of San Diego,
No. 09CV2371-IEG,
2010 U.S. Dist. LEXIS 130878 (S.D. Cal. Dec. 10, 2010) ...................... 11

Pickering v. Bd. of Educ.,
    391 U.S. 563 (1968)..................................................................................... 14

Rankin v. McPherson,
    483 U.S. 378 (1987)..................................................................................... 14

San Diego County Gun Rights Comm. v. Reno,
    98 F. 3d 1121. (9th Cir.1996) ........................................................................ 9

Short v. State,
    No. 228, 1990,
    1991 Del. LEXIS 11 (Del. Supr. Ct. Jan. 14, 1991) ................................... 17

Smith v. BCE, Inc.,
    225 Fed. App'x 212 (5th Cir. 2007) ........................................................... 19

Smith v. State,
    882 A.2d 762 (Del. 2005) ........................................................................... 16

State v. Wilmington Hous. Auth.,
    No. N92-02-1177,
    1993 Del. Super. LEXIS 43 (Del. Super. Ct. Feb. 10, 1993) .................... 19

Thomas v. Anchorage Equal Rights Commission,
    220 F.3d 1134 (9th Cir. 2000) ...................................................................... 9

U.S. v. Cruikshank,
    92 U.S. 542 (1976)........................................................................................ 2

U.S. v. Marzzarella,
    614 F.3d 85 (3d Cir. 2010) ............................................................. 10, 11, 12

Wilmington Hous. Auth. v. Williamson,
    228 A.2d 782 (Del. 1967) ........................................................................... 18

Wishkin v. Potter,
    476 F.3d 180 (3d Cir. 2007) ......................................................................... 6

**Statutes**

18 U.S.C. § 922.................................................................................................. 12

 9 Del. C. § 330 .................................................................................................. 18

10 Del. C. § 6501 ............................................................................................ 1, 19

11 Del. C. § 1256 ............................................................................................... 12

11 Del. C. § 1441 ............................................................................................... 16

11 Del. C. § 1448 ................................................................................................ 17

19 Del. C. § 1441 ................................................................................................. 9

22 Del. C. § 111 .................................................................................................. 18

24 Del. C. § 901 .................................................................................................. 18

31 Del. C. § 4301 ................................................................................................ 19

31 Del. C. § 4308 ................................................................................................ 19

Dover, Del., Code § 70-2 ..................................................................................... 12

New Castle County, Del., Code § 24.01.014 ...................................................... 12

**Other Authorities**

Black's Law Dictionary 1297 (9th ed. 2009)........................................................ 17

Eugene Volokh, Implementing the Right to Keep and Bear Arms for Self-Defense,
    56 U.C.L.A. L. Rev. 1443 (2009) ................................................................... 15

**Rules**

24 C.F.R. § 966.3 .................................................................................................. 4

**Constitutional Provisions**

Del. Const. art. I, § 20................................................................................ 5, 6, 16, 17

U.S. Constitution, art. III .................................................................................. 1, 7

## NATURE AND STAGE OF THE PROCEEDINGS

This is Defendants' Opening Brief in support of their Motion for Summary Judgment. The proceedings leading up to this Brief are discussed infra, in the Statement of the Facts.

## SUMMARY OF THE ARGUMENT

Summary judgment should be granted to Defendants on each of the five counts Plaintiffs asserted in their Second Amended Complaint.

1.   Plaintiffs do not have standing to bring this suit because there is no active case or controversy, as required by Article III of the U.S. Constitution. In the alternative, prudential standing considerations dictate that the Court decline to adjudicate the dispute.

2.   Counts One and Two of the Second Amended Complaint should be dismissed because Defendants' conduct is narrowly tailored to effectuate a substantial government interest, and is therefore constitutional.

3.   Counts Three, Four, and Five should be dismissed because none of them states an independent cause of action.

4.   Count Three should further be dismissed because the doctrine of preemption is inapplicable to a lease provision. Moreover, even if the doctrine of preemption were applicable to lease provisions, Plaintiffs have failed to demonstrate the General Assembly's intent to preempt such action on the part of WHA.

5.   Count Four should further be dismissed because Title 31 of the Delaware Code grants broad powers to WHA, including the authority to adopt a weapons policy.

6.   Count Five should be dismissed because 10 Del. C. § 6501 provides a remedy for harm established under an independent legal theory; it does not provide a cause of action.

## STATEMENT OF THE FACTS

On February 1, 2010, Robert Dowlut, the General Counsel of the National Rifle

Association ("NRA"), sent a letter to the Executive Director of the Wilmington Housing

Authority ("WHA"), Defendant Fred Purnell ("Purnell"), claiming that Section IX.P. of the

WHA Lease and Grievance Procedure (the "WHA Lease") violated the Second Amendment to

the Constitution of the United States. (A1-2.)[1] Purnell responded by reviewing the applicable

law, and emailing the members of WHA's Board of Commissioners (the "Board"). (A109-11;

A4-5.) An internal debate among members of the Board followed, regarding the proper course of

action. (A77-79; A91-93; A6-7; A3.) As Board member Geoff Langdon testified in his

deposition, the Board ultimately concluded that it should not rush into amending the policy. Id.

The then-pending U.S. Supreme Court case McDonald v. City of Chicago, 130 S. Ct. 3020

(2010) would determine whether the Second Amendment was applicable to the states. (A85-86.)

Based on the existing law, the Second Amendment did not apply to the states or their

instrumentalities. See, e.g. U.S. v. Cruikshank, 92 U.S. 542, 553 (1976) (holding that the Second

Amendment restricts the U.S. Congress only). Because of the important public policy concerns

and the paramount importance of the safety and well-being of WHA residents, WHA decided to

await the outcome of the McDonald decision before taking further action. (A81.)

On May 27, 2010, Plaintiff "Jane Doe" filed an action in the Delaware Court of Chancery

seeking to invalidate Section IX.P. of the WHA Lease. [D.I. 1, Ex. A. ¶ 6.] Doe is a resident of

---

[1] References to the Appendix to Defendants' Opening Brief in Support of Their Motion for Summary Judgment are cited as "(A___.)"

The Park View, which is a privately owned, WHA-managed property. [D.I. 13, ¶ 6.] The Park

View is not subject to the WHA Lease.[2]  [D.I. 20, ¶¶ 4-8.]

Defendants removed the case to this Court, and answered the Complaint. [D.I. 1; D.I. 13.]

On June 17, 2010, this Court temporarily stayed the action pending the Supreme Court's decision

in McDonald. [D.I. 10.] On June 28, 2010, the Supreme Court issued its ruling in McDonald,

holding for the first time that the Second Amendment was applicable to the states through the

Due Process Clause of the Fourteenth Amendment. Purnell then immediately suspended

operation of Section IX.P. of the WHA Lease, and The Park View House Rule 24, pending

WHA's review and adoption of a new policy. [D.I. 20, ¶¶ 13, 25; D.I. 24, ¶ 30.]

At the same time, Plaintiff's counsel filed an Amended Complaint adding Plaintiff

Charles Boone, upon concluding that Jane Doe was not a resident in public housing or subject to

Section IX.P. of the WHA Lease. [D.I. 23; see also D.I. 21, at 16-17.]  As discussed below, both

Jane Doe and Charles Boone were recruited by Lee Williams, a member of the Caesar Rodney

Institute and NRA supporter, to be Plaintiffs in this action. (A37-40; A56-58; A60-62.) Notably,

when the Complaint was Amended to include Plaintiff Charles Boone, the suspension of Section

IX.P. was already in effect, but Boone was not informed of this fact when Mr. Williams asked

him to be a plaintiff. (A33-34.) [Compare D.I. 20 with D.I. 23.]

On September 7, 2010, the Court again stayed the proceedings allowing WHA to

complete the process of amending the WHA Lease in keeping with the McDonald decision.

[D.I. 29.]  The U.S. Department of Housing and Urban Development ("HUD") requires that

---

[2] As noted in the Purnell Declaration, The Park View is owned by Electra Arms Senior Associates, LP, a Delaware limited partnership, which is in turn owned by Edison Capital Housing Investment, Inc., a California corporation, and Wilmington Revitalization Corporation ("WRC"), a non-profit Delaware corporation. Edison Capital is the limited partner, and WRC is the general partner. Electra Arms Senior Associates, LP entered into a management contract with WHA on October 9, 1998.

public housing authorities provide a 30-day period for public comment prior to amending a public housing lease. 24 C.F.R. § 966.3. With the advice of counsel, WHA drafted a proposed revision to the WHA Lease, and gave notice of a public hearing on the proposed policy. (A8-9; A15.) Surprisingly, neither of the Plaintiffs appeared nor made any written comment about the proposed policy. (A35-36; A16-17.) Ironically, Robert Dowlut, the same NRA General Counsel who sent WHA the letter in February claiming that Section IX.P. of the WHA Lease was unconstitutional, became agitated after receiving a letter inviting the NRA to comment on the policy. (A14.) The NRA expressly refused to participate in the public hearing process, or to submit written comments to the proposed policy, as requested. (A107; A10-11; A12-13.)

Following the public hearing on October 14, 2010, the Board conferred and modified the proposed policy. (A83-85, A87-88; A120-21; A19-21.) On October 25, 2010, the Board adopted the WHA Firearms and Weapons Policy (the "New Policy"[3]), thereby amending the terms of Section IX.P. (A22-25.)

The New Policy, in essence, permits residents to possess weapons in their residences for the purpose of self defense, but prohibits the possession or display of weapons in common areas. There is an exception that allows residents to transport firearms into and out of the building. (A24-25.) In the course of such transportation, a resident may use a weapon in self-defense. The possession and display of weapons in the community rooms was one of WHA's primary concerns. (A89; A112-14, A115-17, A118; A94-95.) The community rooms include communal entertainment facilities such as large screen television sets and other appliances. Testimony of the Board members shows that WHA was concerned for the safety and welfare of residents

_____

[3] Defendants use the term "New Policy" to refer both to the WHA Firearms and Weapons Policy, and to The Park View's Amended House Rule 24, which was adopted by the WRC Board of Directors on December 13, 2010, and which is substantively identical to the provision governing the WHA public housing facilities. (A26; A27.)

4

because of the risk of accidental or intentional shootings, and the alarm caused to other residents from having weapons displayed in the community room. (A89; A80; A123-25; A96-99; A101; A106; A64-65; A42-44.)

The New Policy also requires residents to follow all applicable federal and state laws with respect to ownership and possession of guns, and to exercise reasonable care in the possession and use of guns and ammunition. The New Policy also permits WHA to ask for a copy of a resident's CCDW license only when there is <u>cause</u> to believe that the resident has violated the New Policy or the law. (A24-25.)

After the adoption of the New Policy, and despite the fact that the Policy allows weapons possession in a tenant's unit, and their refusal to comment during the public hearing, Plaintiffs elected to continue this action. They apparently contend that any restriction on weapons in WHA common areas such as the community room, and the provision in the New Policy permitting WHA officials to request a copy of any applicable gun license, violate the Second Amendment and/or Article I, § 20 of the Delaware State Constitution.

This Court has ruled that Plaintiffs are entitled to a ruling on the New Policy. [D.I. 21 at 27.] The Court has, however, limited this matter to the New Policy, denying review of the former Section IX.P.

The depositions of Jane Doe and Charles Boone were thereafter taken.[4] Their testimony shows that the NRA solicited both Plaintiffs through its local operative, Lee Williams, to become "straw" plaintiffs in the case. (A37-40; A56-58; A60-62.) Indeed, both Plaintiffs testified that

---

[4] Plaintiff Jane Doe has, through her counsel, made much of an alleged concern about "retaliation" as a basis to keep her identity secret. Her testimony revealed that she in fact never contended that she suffered any form of retaliation. (A67-68.) She further admitted that she got along well with The Park View Housing Manager. (A67.) Plaintiff Charles Boone gave similar testimony regarding Mr. Purnell. (A-49.)

Mr. Williams and Plaintiffs' counsel literally came to their homes to seek their involvement as plaintiffs in the case. (A39-40; A57-58.) Notably, neither Plaintiff possesses a weapon. (A29-30; A63; A70.) Neither has ever sought a license to carry a concealed deadly weapon ("CCDW.") (A30-31; A66.) Neither has ever requested information from WHA about whether they could possess a weapon in their home or on WHA property, either before or during this lawsuit. (A32; A59; A63.)

Indeed, Plaintiff Charles Boone expressly stated in his deposition that he did not have a problem with <u>any</u> of the restrictions set forth in the New Policy. (A45-49.) Plaintiff Jane Doe gave similar testimony. (A71-74.) She also testified that other residents would likely be alarmed by the presence of weapons in common areas, such as the community room. (A64-65.) Of course, Plaintiffs' testimony echoed the concerns of the Board members who unanimously voted to adopt the New Policy, and shows the reasonableness of the Policy.

It is against this backdrop that Plaintiffs challenge the New Policy as allegedly in violation of the Second Amendment of the U.S. Constitution and/or Article I, § 20 of the Delaware State Constitution. For the reasons set forth below, neither claim has merit.

## ARGUMENT

## I.    DEFENDANTS HAVE MADE THE REQUIRED SHOWING FOR AN AWARD OF SUMMARY JUDGMENT IN THEIR FAVOR

Pursuant to Federal Rule of Civil Procedure 56(c)(2), a motion for summary judgment is appropriate where "the pleadings, the discovery and disclosure of materials on file, and any affidavits show that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law." <u>Wishkin v. Potter</u>, 476 F.3d 180, 184 (3d Cir. 2007).

Thus, "[w]here the record taken as a whole could not lead a rational trier of fact to find

for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587

(quoting First Nat'l Bank, 391 U.S. at 288).

## II.    PLAINTIFFS LACK STANDING TO BRING THIS SUIT

It is a fundamental tenet of American jurisprudence that the judiciary only decides

actual cases or controversies. The Courts do not issue advisory opinions nor do they decide

merely hypothetical disputes. A plaintiff must therefore demonstrate standing to challenge an

allegedly unconstitutional policy or rule by proving the existence of a case or controversy.

To meet minimum Article III standing requirements, a plaintiff must have suffered an

injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized,

and (b) actual or imminent, not conjectural or hypothetical. Lujan v. Defenders of Wildlife, 504

U.S. 555, 560-561 (1992); see also Lozano v. City of Hazleton, 620 F.3d 170, 183 (3d Cir. 2010)

(same); AstraZeneca Pharms. LP v. Mylan Pharms. Inc., 719 F. Supp. 2d 388, 398 (D. Del.

2010) (same). But even then, policy dictates require a reviewing Court to consider whether

prudential considerations should limit the exercise of judicial power. Lozano v. City of Hazleton,

620 F.3d 170, 183 (3d Cir. 2010).  Neither Plaintiff satisfies either requirement.

In this case, the record shows that both Plaintiffs were solicited by the NRA through a

local supporter, Lee Williams, to challenge WHA's firearms policy. As a result, Plaintiffs raise

merely hypothetical concerns about the policy—neither has suffered any injury in fact. Plaintiffs

therefore do not satisfy minimum Article III standing requirements. But even if they did,

prudential standing requirements suggest that the Court should refrain from considering the

challenges they raise to the New Policy. Id.

Plaintiffs' depositions revealed that neither individual (1) currently possesses a firearm

(A29-30; A63, A70); (2) expressed concrete plans for obtaining a firearm (A29-30, A51-52;

A63); or (3) has faced eviction or disciplinary action of any kind, at any time, as a result of a weapons issue. (A49; A67-68.)

Moreover, Plaintiff Boone specifically testified that he had no objection to any of the provisions of the New Policy. (A45-49.) Each of the seven provisions of the WHA policy were reviewed with him, and Mr. Boone testified outright that he had no objection to any of the restrictions. Id. He also stated that his wife was uncomfortable with guns, and that he would not likely keep a gun in his WHA unit. (A41, A50.) Mr. Boone further testified that if he did ever have a gun, he would have to "hide it" from his wife. (A41-42.) He also stated that he would not take a gun into a common area. (A43-44.) Finally, he testified that he felt no need for a gun in his current residence, because he was familiar with the surroundings, and knew the people in his neighborhood. (A51-52.) He noted that he would only feel the need for a gun if he were relocated to another WHA project, where he was unfamiliar with the people in the neighborhood. (A51-52, A53, A54.) Such an eventuality is merely speculative.

Plaintiff Doe offered similar testimony in connection with her challenge to the New Policy. She has not owned, possessed, or used a gun in more than 20 years. (A63, A66, A70.) This includes years during which she did not live in WHA properties, and was completely unrestricted in her right to carry a gun. Plaintiff Doe further stated that she agreed with all of the provisions of the New Policy, except for Paragraph 3, regarding weapons in common areas. (A71-74.) Doe explained, however, that she would not want to carry a weapon openly in the common areas, nor would she want other residents to do so. (A64-65.) She also testified to one of the concerns that led the WHA Board to adopt the policy, agreeing that the visible presence of firearms in a community room would likely alarm other residents. (A64-65.) Thus, she testified

that if she did carry a firearm into the common areas of The Park View, such as the community room, it would be concealed.

Of course, to carry a concealed weapon she would be required to obtain a CCDW license under Delaware law. Yet, Doe testified that she did not have a gun or a CCDW license, and had never applied for such a license. (A63, A66.) In fact, she is not even aware of the requirements for such a license. Id.

In Delaware, CCDW licenses are not granted on demand. Citizens who request such a license must meet the requirements of 19 Del. C. § 1441(a), including, *inter alia*: a criminal background check; supporting certificates of "5 respectable citizens" attesting to the applicant's character and need for the license; extensive firearms training; and a statement that the license is needed for personal protection. Even then, the issuance of a license is left to the discretion of the Superior Court in the county in which the applicant resides. Id. at § 1441(d). Notably, Plaintiff Jane Doe is over 70 years old and testified to health problems resulting from a stroke. (A69, A75.) She would also have to establish the need for a CCDW license and have her application subject to public comment after publication of her application. Absent Doe's actual fulfillment of these requirements and receipt of a CCDW license, this case presents nothing more than a hypothetical dispute. Thomas v. Anchorage Equal Rights Commission, 220 F.3d 1134, 1137 (9th Cir. 2000). See also, San Diego County Gun Rights Comm. v. Reno, 98 F. 3d 1121, 1126. (9th Cir. 1996).

Nor have Plaintiffs presented any evidence that, even if they did choose to own or possess a weapon on WHA premises, they would be subject to a real threat of eviction. As noted above, Plaintiff Boone fully agrees with the New Policy applicable to public housing tenants, and is therefore unlikely to violate them. Likewise, Plaintiff Jane Doe's objection is purely

hypothetical since she does not own a weapon and has not applied for a license to carry a

concealed deadly weapon. (A63, A66, A70.)[5]

## III.   COUNT ONE, ALLEGING A VIOLATION OF THE SECOND AMENDMENT, SHOULD BE DISMISSED BECAUSE THE NEW POLICY IS CONSTITUTIONAL UNDER ESTABLISHED THIRD CIRCUIT CASE LAW

Even if Plaintiffs have standing under Article III to maintain an action against Defendants

based on the New Policy, Defendants are entitled to summary judgment on the five counts in

their Second Amended Complaint.[6]

### A.   The Third Circuit Has Held That Intermediate Scrutiny Is The Appropriate Standard Of Review In Second Amendment Cases

On June 28, 2010, the Supreme Court issued its opinion in <u>McDonald v. City of Chicago</u>,

holding that the Second Amendment's right to bear arms is applicable to the states through the

Fourteenth Amendment's Due Process Clause. 130 S. Ct. at 3026. The Court did not, however,

address the appropriate standard of review to be applied when considering a challenge to

government action alleged to infringe upon an individual's Second Amendment rights. <u>Id.</u> at

3115 (Stevens, J., dissenting).

Shortly after <u>McDonald</u> was issued, the Third Circuit established a framework through

which to review Second Amendment challenges. <u>U.S. v. Marzzarella</u>, 614 F.3d 85 (3d Cir.

2010). The Court developed a two-pronged approach, requiring that trial courts (1) ask whether

the challenged conduct imposes a burden on conduct falling within the scope of the Second

Amendment's guarantee; and (2) if the conduct imposes a burden, evaluate it under "some form

---

[5] Although both Plaintiffs Jane Doe and Charles Boone agreed with Paragraph 4 of the weapons policy applicable to them, that is, the provision permitting WHA to request a copy of applicable legal permits to carry a firearm for cause, absent the receipt of CCDW license, neither has standing.

[6] Defendants also adopt the arguments presented by *amicus curiae* Brady Center to Prevent Gun Violence.

of means-end scrutiny." Id. at 89. In the process, the Third Circuit rejected a strict scrutiny

standard, noting that such a standard, if applicable at all, should be reserved for cases like

District of Columbia v. Heller, 544 U.S. 570 (2008) involving a complete ban on possession.

Mazzarella. at 96-97.

In defining the means-end scrutiny to be applied, the Court found that the governmental

interest asserted in support of the challenged conduct must be either significant, substantial, or

important. Id. at 98. The Court also held that the fit between the restriction imposed and the

governmental interest must be reasonable, but not perfect. Id. Thus, "the regulation need not be

the least restrictive means of serving the interest," but must not burden "reasonably necessary"

conduct. Id.

The Third Circuit's approach was more recently endorsed by the Southern District of

California, which concluded that "[t]o date, a majority of cases citing to McDonald and

employing some form of heightened scrutiny . . . have employed intermediate scrutiny. The trend

prior to McDonald was intermediate scrutiny." Peruta v. County of San Diego, No. 09CV2371-

IEG, 2010 U.S. Dist. LEXIS 130878, at *23-24 (S.D. Cal. Dec. 10, 2010) (citing cases).

Because, unlike the law in Heller, the New Policy (1) does not involve a complete ban on

the possession of firearms in the home, and (2) provides an exception for self-defense, the

intermediate scrutiny standard defined by the Third Circuit in Marzzarella should be applied.

> **B.**     **The New Policy Does Not Impose A Burden On Conduct Falling
>             Within The Scope Of The Second Amendment's Guarantee**

The right defined in Heller is much more narrow than the rights asserted by Plaintiffs.

First, the Court only addressed the possession of firearms in the home, nowhere else. Heller, 554

U.S. at 635. The Court specifically held that the District "must permit [Heller] to register his

handgun and must issue him a license to carry it in the home." Id. (emphasis added). The Court

stated nothing about Heller's right to carry a firearm in public spaces. In fact, the Court expressly acknowledged the limited nature of its holding, writing that "whatever else it leaves to <u>future evaluation</u>, it surely elevates above all other interests the right of law-abiding, responsible citizens to use arms <u>in defense of hearth and home</u>." <u>Id.</u> (emphasis added). Therefore, <u>Heller</u> only establishes a right to bear arms in one's home, not in common areas of the building shared with other residents.

Furthermore, even the limited right defined by the Court in <u>Heller</u> may be circumscribed by government regulation. <u>Id.</u> at 626 ("Like most rights, the right secured by the Second Amendment is not unlimited. . . . [T]he right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose"); <u>see also</u> <u>McDonald</u>, 130 S. Ct. at 3047. There is a well-established right on the part of governments to restrict the use or possession of firearms on government property. <u>See</u>, <u>e.g.</u>, 18 U.S.C. § 922(q)(2)(A) (prohibiting possession of firearms in school zones); 39 C.F.R. 232.1(l) (prohibiting possession of firearms on postal property); 11 <u>Del. C.</u> § 1256 (prohibiting deadly weapons in a detention facility); New Castle County, Del., Code § 24.01.014 (prohibiting possession or discharge of firearms in county parks); Dover, Del., Code § 70-2 (requiring a license for possession or use of a firearm). And, as the <u>Heller</u> Court noted, "nothing in our opinion should be taken to cast doubt on . . . laws forbidding the carrying of firearms in sensitive places such as schools and government buildings." 554 U.S. at 626-27.

The Third Circuit subsequently held that the traditional limitations on the right to bear arms identified by the Supreme Court in Heller actually fall <u>outside</u> the scope of the Second Amendment. <u>Marzzarella</u>, 614 F.3d at 91. After carefully analyzing the language of <u>Heller</u>, the Court concluded that the "better reading" of the case indicates that "the identified restrictions are

presumptively lawful because they regulate conduct outside the scope of the Second Amendment." Id. Thus, according to the Third Circuit, "laws forbidding the carrying of firearms in sensitive places such as schools and government buildings" are entirely outside the ambit of the Second Amendment, and not subject to review under its provisions. WHA's regulation of the possession of weapons in common areas must certainly fall within this exception, because of the particular vulnerability of the residents most affected by the New Policy—those who may be intentionally or accidentally injured by another's possession or use of firearms in common areas.

### C.     The New Policy Is Narrowly Tailored To Effectuate A Substantial Governmental Interest, And Is Therefore Constitutional

Assuming, however, that the disputed provisions of the New Policy do burden Second Amendment conduct, the New Policy should be upheld because it is narrowly tailored to effectuate a substantial, significant, or important government interest. Because Plaintiff Doe only objects to Paragraph 3 of the New Policy applicable to The Park View (A34-35) that is the only issue before the Court. See, e.g. Heller, 554 U.S. at 631 ("Respondent conceded at oral argument that he does not have a problem with licensing . . . [w]e therefore . . . do not address the licensing requirement"). However, the analysis described infra is equally applicable to all aspects of the New Policy, because the entire Policy is based on a substantial government interest.

### 1.     The Distinction Between State As Sovereign And As Landlord

There is a well-established distinction between that conduct in which a government may engage when acting as sovereign, and that conduct in which it may engage when acting as a proprietor of land—the government has much greater latitude in the latter circumstance. As discussed supra, the government's right to prohibit the possession or use of firearms on government property has long been recognized.

The distinction between government as sovereign and landowner is also supported by analogous case law under the First and Fourth Amendments. The Third Circuit adopted such an analogy, writing that "because <u>Heller</u> is the first Supreme Court case addressing the scope of the individual right to bear arms, we look to other constitutional areas for guidance in evaluating Second Amendment challenges. We think the First Amendment is the natural choice." <u>Marzzarella</u>, 614 F.3d at 89, n.4; <u>see also</u> <u>Heller</u>, 554 U.S. at 579, 582, 591 (drawing parallels between the First, Second and Fourth Amendments).

There is no question that a public employer has more latitude to restrict the speech of its employees than it does when acting as sovereign. For example, a public employee's speech is unprotected by the First Amendment unless he speaks "as a citizen on a matter of public concern." <u>See</u>, <u>e.g.</u> <u>Garcetti v. Ceballos</u>, 547 U.S. 410, 418 (2006); <u>Connick v. Myers</u>, 461 U.S. 138, 147 (1983) (same). Moreover, even when a public employee speaks on matters of public concern, his right to free speech must be balanced against the government's interest in effective administrative. <u>Rankin v. McPherson</u>, 483 U.S. 378, 384 (1987). Similar exceptions exist for public employers under the Fourth Amendment. <u>See</u>, <u>e.g.</u> <u>O'Connor v. Ortega</u>, 480 U.S. 709 (1987) (refusing to impose a probable cause standard for workplace searches due to the special needs of public employers). This distinction in the analysis of government conduct is based on the fact that "the State has interests as an employer in regulating the speech of its employees that differ significantly from those it possesses in connection with regulation of the speech of the citizenry in general." <u>Pickering v. Bd. of Educ.</u>, 391 U.S. 563, 568 (1968).

Thus, "[w]here the government is acting as a proprietor, managing its internal operations, rather than acting as lawmaker with the power to regulate or license, its action will not be subjected to the heightened review to which its actions as a lawmaker may be subject." <u>Int'l</u>

14

Soc'y for Krishna Consciousness v. Lee, 505 U.S. 672, 678 (1992). Consequently, WHA, which acts only in the capacity of a proprietor and landlord, must be granted greater latitude in regulating the possession and use of firearms on its property than would a governmental entity operating in a legislative capacity, seeking to limit gun possession in public places. See Eugene Volokh, Implementing the Right to Keep and Bear Arms for Self-Defense, 56 U.C.L.A. L. Rev. 1443, 1473-75 (2009) ("there is both precedent and reason for allowing the government acting as proprietor extra power to restrict the exercise of many constitutional rights on its property").

### 2.      Intermediate Scrutiny Applied

As is made clear by the ample deposition testimony in this matter, Defendants were motivated by significant governmental interests in designing the New Policy. Among these interests are the constitutional rights of Plaintiffs, and the health, welfare and safety of all WHA residents, staff, and the general public who access WHA's properties. Defendants were also driven by the unique circumstances of many WHA properties, which include various community spaces such as daycare facilities, libraries, and community rooms that play host to many of WHA's most vulnerable residents: the elderly and children. (A102-05.)

In crafting Paragraph 3 of the New Policy, Defendants considered all of these issues, including the concerns of WHA residents as expressed at the October 14, 2010 public hearing, which resulted in amendments to the draft policy presented to the Court in conjunction with the Purnell Declaration. [D.I. 20.] (A20-21; A89.) As a result, the Board eventually adopted a policy that is narrowly tailored to protect the rights and interests of all WHA residents, including Plaintiffs.

To ensure Plaintiffs' Second Amendment rights, the New Policy permits the possession of firearms in a tenant's residence, but limits the tenant's use of any firearm to circumstances of self-defense. In common areas, however, WHA must more carefully balance rights and safety.

Common areas are those where tenants' Second Amendment rights are most likely to come into conflict, because Plaintiffs' rights to possess a weapon are much more likely to impact upon others' rights <u>not</u> to possess a weapon, and to be safe from accidental or intentional firearm violence. Moreover, it is in these areas that the very presence of a gun is most likely to alarm residents and their guests, such as grandchildren. Consequently, under the New Policy, weapons may only be possessed in common areas to the extent they are being transported to and from a tenant's unit, and may only be used in common areas to the extent they are used in self-defense.

Thus, Paragraph 3 is carefully tailored to permit Plaintiffs to exercise their Second Amendment rights, while simultaneously preserving the rights and safety of others. The solution proposed by Plaintiffs—that Defendants should not be permitted to impose any lease restrictions more extensive than Paragraph 1—sacrifices the rights of the many for those of the few. No WHA resident should be forced to be subject to increased risk of harm from firearms in common areas. Finally, the remaining provisions of the New Policy merely require tenants to comply with local, state and federal law, and are therefore beyond objection by Plaintiffs. <u>See</u>, <u>e.g.</u> 11 <u>Del.</u> <u>C.</u> §§ 1441, 1445, 1456.

**IV.   COUNT TWO SHOULD BE DISMISSED BECAUSE PLAINTIFFS CANNOT PROVE A VIOLATION OF THE DELAWARE STATE CONSTITUTION**

Count Two of Plaintiffs' Second Amended Complaint alleges that the New Policy violates Article I, § 20 of the Delaware State Constitution, which provides that "[a] person has the right to keep and bear arms for the defense of self, family, home and State, and for hunting and recreational use." Only four cases have cited this provision, each addressing the existence of a right (or lack thereof) to carry a concealed deadly weapon under the Article I, § 20.[7] None has

---

[7] <u>Dickerson v. State</u>, 975 A.2d 791, 796 (Del. 2009) (holding that Article I, § 20 does not guarantee the right to carry a concealed deadly weapon); <u>Smith v. State</u>, 882 A.2d 762 (Del. 2005) (table cite) (holding that carrying a concealed deadly weapon is a privilege provided by

addressed the question at issue in the case at bar—whether a public housing authority may impose reasonable restrictions upon the right to bear arms outside of a tenant's public housing unit, but within common areas of the housing authority's property.

In the absence of any guidance, this Court should look to Second Amendment case law for guidance.[8] Defendants therefore fully incorporate the arguments in Section III, <u>supra</u>.

## V.   COUNTS THREE, FOUR, AND FIVE SHOULD BE DISMISSED BECAUSE THEY FAIL TO STATE INDEPENDENT CAUSES OF ACTION

### A.   Count Three Fails To State An Independent Cause Of Action, And Further Fails Because The Preemption Statutes Do Not Apply to Defendants

Count Three of Plaintiffs' Second Amended Complaint alleges that Defendants' conduct is preempted by state law. Count Three should be dismissed because preemption is a legal principle, not an independent cause of action. <u>See</u>, <u>e.g.</u> <u>Black's Law Dictionary</u> 1297 (9th ed. 2009) ("The <u>principle</u> (derived from the Supremacy Clause) that a federal law can supersede or supplant any inconsistent state law or regulation") (emphasis added).

Even if Plaintiffs could assert Count Three as an independent cause of action, no relief is available. "Preemption refers to circumstances where the <u>law</u> of a superior sovereign takes precedence over the <u>laws</u> of a lesser sovereign." <u>A.W. Fin. Servs., S.A. v. Empire Res., Inc.</u>, 981 A.2d 1114, 1121 (Del. 2009) (emphasis added). The concept of preemption is wholly inapplicable in this case, because Defendants are not a legislative body, and they do not and

---

statute, not a right protected by Article 1, § 20); <u>Short v. State</u>, No. 228, 1990, 1991 Del. LEXIS 11, at *4-5 (Del. Supr. Ct. Jan. 14, 1991) (holding that 11 <u>Del. C.</u> § 1448 (possession of a deadly weapon by a person prohibited) does not violate Article 1, § 20); <u>In re: Application of McIntyre</u>, 552 A.2d 500, 501 n.1 (Del. Super. Ct. 1988) (noting without holding that Article 1, § 20 "does not necessarily require that such arms may be kept concealed").

[8] Defendants reject Plaintiffs' previous contention that Article I, § 20 provides broader rights to Plaintiffs than the Second Amendment. While Article I, § 20 extends to sport and recreational uses of firearms, no such right could reasonably be asserted as to residential housing premises.

cannot pass laws or ordinances. Defendants are unaware of any precedent applying the principle of preemption to the terms of a lease. The proper manner for challenging a contractual obligation such as a lease is to challenge its legality under existing law—an approach that Plaintiffs have already adopted by challenging the New Policy under federal and state constitutional provisions.

Finally, even if Defendants' conduct in establishing the New Policy could be considered legislative such that it is subject to the doctrine of preemption, Plaintiffs cannot satisfy their burden of proving preemption. "In Delaware, the State and its political subdivisions are permitted to enact similar provisions and regulations, so long as the two regulations do not conflict." Cantinca v. Fontana, 884 A.2d 468, 473 (Del. 2005). "The predominant test for conflict in a preemption analysis is whether the state statute was intended to be exclusive." Id.

Notably, neither of the preemption statutes Plaintiffs rely on applies to Defendants. 9 Del. C. § 330(c) (preempting county governments); 22 Del. C. § 111 (preempting municipal governments). As Plaintiffs stated in their Second Amended Complaint, the Delaware Supreme Court has held that WHA is a state agency, thus it cannot be a county or municipal government. Wilmington Hous. Auth. v. Williamson, 228 A.2d 782, 787 (Del. 1967) (superseded on other grounds, Fiat Motors of N. Am. v. Wilmington, 498 A.2d 1062 (Del. 1985)). [D.I. 40 ¶¶ 16, 28.]

Nor can the General Assembly's preemptive intent be inferred from the statutes Plaintiffs cited. Plaintiffs cite to a myriad of firearms statutes in Titles 11 and 24 of the Delaware Code, relating to crimes and the licensing of firearms dealers.[9]  Neither of these Titles addresses landlord-tenant relationships, governed by Title 25, or public housing authorities, governed by Title 31. Had the General Assembly intended to preempt Defendants' conduct, there would be evidence of such intent in a relevant Title of the Delaware Code.

---

[9] More specifically, Plaintiffs point to 11 Del. C. §§ 1441-1442, 1444-1445, 1447-1448A, 1454-1456; and 24 Del. C. § 901-904A.

**B.      Count Four Should Be Dismissed Because Title 31, Establishing
         WHA, Does Not Provide A Cause Of Action For Exceeding Scope Of
         Authority**

Count Four alleges that Defendants have exceeded the scope of their authority under

31 Del. C. § 4301, et seq., in establishing the New Policy. No such cause of action exists. In fact,

Chapter 43 does not provide any private cause of action against WHA beyond those that already

exist at common law.

Even if such a claim existed, Plaintiffs' allegations are baseless. The scope of WHA's

authority is defined by 31 Del. C. § 4308, which provides that WHA shall have "all the powers

necessary or convenient to carry out and effectuate the purposes and provisions of this chapter."

Id. at § 4308(a) (emphasis added). The Delaware Supreme Court has further stated that

"extensive powers are conferred upon" a state housing authority under Chapter 43. Williamson,

228 A.2d at 786; see also State v. Wilmington Hous. Auth., No. N92-02-1177, 1993 Del. Super.

LEXIS 43, at *5 (Del. Super. Ct. Feb. 10, 1993) (describing "broad terms in § 4308"). Thus, it is

clear that Defendants possess the authority to establish the New Policy.

**C.      Count Five, Seeking Declaratory Relief, Should Be Dismissed Because
         10 Del. C. § 6501 Does Not Provide An Independent Cause of Action**

Count Five of Plaintiffs' Second Amended Complaint purports to state a claim for

declaratory relief. However, 10 Del. C. § 6501 does not provide an independent cause of action,

it is merely a theory of recovery. Smith v. BCE, Inc., 225 Fed. App'x 212, 216 (5th Cir. 2007)

("Although the petition formally stated two independent causes of action for breach of contract

and declaratory judgment, the latter ground is merely a theory of recovery for the former.").

## CONCLUSION

For the reasons set forth in the brief above, Defendants respectfully request that summary judgment be granted in their favor and that Plaintiffs' Complaint be dismissed in its entirety.

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Barry M. Willoughby*

Barry M. Willoughby, Esquire (Bar I.D. 1016)
Lauren E. Moak, Esquire (Bar I.D. 5366)
The Brandywine Building, 17th Floor
1000 West Street
P.O. Box 391
Wilmington, DE  19899-0391
Telephone: (302) 571-6666
Facsimile: (302) 576-3345
E-mail:  bwilloughby@ycst.com

*Attorneys for Defendants Wilmington Housing Authority and Frederick S. Purnell, Sr.*

Dated:  February 21, 2011

20