## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JANE DOE and CHARLES BOONE, | ) |
| | ) |
| Plaintiffs, | ) |
| v. | ) |
| | ) C.A. No. 10-473-LPS |
| WILMINGTON HOUSING AUTHORITY | ) |
| and FREDERICK S. PURNELL, SR., in his | ) **JURY TRIAL DEMANDED** |
| official capacity as executive director of the | ) |
| Wilmington Housing Authority, | ) |
| | ) |
| Defendants. | ) |

### DEFENDANTS' REPLY BRIEF
### IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

 

Barry M. Willoughby, Esquire (Bar I.D. 1016)
Lauren E. Moak, Esquire (Bar I.D. 5366)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Brandywine Building, 17th Floor
1000 West Street
P.O. Box 391
Wilmington, DE 19899-0391
Telephone: (302) 571-6666; (302) 576-3255
Facsimile: (302) 576-3345; (302) 576-3750
E-mail: bwilloughby@ycst.com; lmoak@ycst.com

*Attorneys for Defendants Wilmington Housing Authority
and Frederick S. Purnell, Sr.*

Dated: April 13, 2011

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................................... iii

ARGUMENT .....................................................................................................................................1

    I.    PLAINTIFFS LACK STANDING TO BRING THIS SUIT ........................................1

    II.   COUNT ONE, ALLEGING A VIOLATION OF THE SECOND AMENDMENT, SHOULD BE DISMISSED BECAUSE THE NEW POLICY IS CONSTITUTIONAL UNDER ESTABLISHED THIRD CIRCUIT CASE LAW ......................................................................................3

        A.    The New Policy Does Not Implicate Plaintiffs' Second Amendment Rights ...............................................................................3

        B.    Intermediate Scrutiny Is The Appropriate Standard Of Review ...........................5

        C.    The New Policy Is Narrowly Tailored To Effectuate A Substantial Governmental Interest, And Is Therefore Constitutional ...............................................................................................6

    III.  COUNT TWO SHOULD BE DISMISSED BECAUSE PLAINTIFFS CANNOT PROVE A VIOLATION OF THE DELAWARE STATE CONSTITUTION ..........................................................................................................7

    IV.  COUNTS THREE, FOUR, AND FIVE SHOULD BE DISMISSED BECAUSE THEY FAIL TO STATE INDEPENDENT CAUSES OF ACTION .......................................................................................................................8

        A.    Count Three Fails To State An Independent Cause Of Action, And Further Fails Because The Preemption Statutes Do Not Apply to Defendants ....................................................................................8

        B.    Count Four Should Be Dismissed Because Title 31, Establishing WHA, Does Not Provide A Cause Of Action For Exceeding The Scope Of Authority ................................................................................9

        C.    Count Five, Seeking Declaratory Relief, Should Be Dismissed Because 10 Del. C. § 6501 Does Not Provide An Independent Cause of Action ...........................................................................................9

CONCLUSION ..................................................................................................................................10

**TABLE OF AUTHORITIES**

**Cases**

A.W. Fin. Servs., S.A. v. Empire Res., Inc.,
 981 A.2d 1114 (Del. 2009) .................................................................................................... 8

Baer v. Chase,
 392 F.3d 609 (3d Cir. 2004) .................................................................................................. 2

Burson v. Freeman,
 504 U.S. 191 (1992) ............................................................................................................... 6

Cordance Corp. v. Amazon,
 631 F. Supp. 2d 477 (D. Del. 2009) ...................................................................................... 2

DiGiacinto v. George Mason Univ.,
 704 S.E.2d 365 (Va. 2011) ..................................................................................................... 5

District of Columbia v. Heller,
 554 U.S. 570 (2008) ..................................................................................................... 4, 6, 7

Fiat Motors of N. Am. v. Wilmington,
 498 A.2d 1062 (Del. 1985) .................................................................................................... 8

Garcetti v. Ceballos,
 547 U.S. 410 (2006) ............................................................................................................... 7

IMS Health Inc. v. Ayotte,
 550 F.3d 42 (1st Cir. 2008) ................................................................................................... 6

Lozano v. City of Hazleton,
 620 F.3d 170 (3d Cir. 2010) .................................................................................................. 1

McDonald v. City of Chicago,
 130 S. Ct. 3020 (2010) .......................................................................................................... 1

O'Connor v. Ortega,
 480 U.S. 709 (1987) ............................................................................................................... 7

Sims v. U.S.,
 963 A.2d 147 (D.C. 2008) ..................................................................................................... 4

Summers v. Earth Island Inst.,
 555 U.S. 483 (2009) ............................................................................................................... 1

Troiano v. Supervisor of Elections,
 382 F.3d 1276 (11th Cir. 2004) ............................................................................................. 1

U.S. v. Dorosan,
   350 Fed. App'x 874 (5th Cir. 2009) ................................................................................... 5

U.S. v. Marzzarella,
   614 F.3d 85 (3d Cir. 2010) ................................................................................... 3, 5, 6, 7

U.S. v. Masciandaro,
   No. 09-4839,
   2011 U.S. App. LEXIS 5964 (4th Cir. Mar. 24, 2011) ..................................................... 4

Williams v. State,
   10 A.3d 1167 (Md. 2011) .................................................................................................. 4

Wilmington Hous. Auth. v. Williamson,
   228 A.2d 782 (Del. 1967) .................................................................................................. 8

Yatzus v. Appoquinimink Sch. Dist.,
   458 F. Supp. 2d 235 (D. Del. 2006) ................................................................................... 2

**Statutes**

10 Del. C. § 6501 ...................................................................................................................... 9

31 Del. C. § 4308(a) .................................................................................................................. 9

**Other Authorities**

Black's Law Dictionary
   1297 (9th ed. 2009) ............................................................................................................ 8

## ARGUMENT

I.  **PLAINTIFFS LACK STANDING TO BRING THIS SUIT**

Defendants' challenge to Plaintiffs' standing applies to the Original Policies as well as the New Policy. As the Supreme Court has repeatedly recognized, this Court has an independent obligation to satisfy itself as to a plaintiff's standing to bring suit. Summers v. Earth Island Inst., 555 U.S. 483 (2009) ("it is well established that the court has an independent obligation to assure that standing exists, regardless of whether it is challenged by any of the parties"). There no evidence that while the Original Polices were in effect either Plaintiff advised WHA that they wanted to keep a gun in their home, that they in fact did so, or that they suffered any adverse action from WHA in connection with gun ownership or possession. (A29; A32; A49-50; A59; A63; A67-68; A70.)

The Court, of course, need not reach this issue since the Original Policies are moot. The Original Policies were suspended after the Supreme Court issued its decision in McDonald v. City of Chicago, 130 S. Ct. 3020 (2010). Defendants' assurance that the Original Policies will not be reinstituted is sufficient to establish that the Original Policies are moot. See, e.g. Troiano v. Supervisor of Elections, 382 F.3d 1276, 1283 n.4 (11th Cir. 2004) (citing cases).

Plaintiffs also lack standing to challenge the New Policy. Plaintiffs agree that to prove standing, they must have suffered an injury in fact, that is: "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." Lozano v. City of Hazleton, 620 F.3d 170, 183 (3d Cir. 2010).

In response to Defendants' standing argument, Plaintiffs mischaracterize their own deposition testimony and attempt to supplement it with a sham declaration by Ms. Doe.[1] The

---

[1] The so-called "declaration" is invalid in any event. It is signed in the pseudonym of the plaintiff "Jane Doe," a mythical person, not sworn to by a real person.

1

sham declaration doctrine "precludes a witness from saying one thing in a deposition and something different in a summary judgment declaration." Cordance Corp. v. Amazon, 631 F. Supp. 2d 477, 480 (D. Del. 2009). In order to preserve the validity of the sham declaration, a declarant must demonstrate a plausible explanation for the conflict. Baer v. Chase, 392 F.3d 609, 624 (3d Cir. 2004). This Court has indicated that, in evaluating a sham declaration, the following factors should be considered: "(1) the affiant was cross-examined during earlier testimony; (2) the affiant had access to the relevant evidence at the time of the earlier testimony; (3) the affidavit was predicated on newly discovered evidence; and (4) the earlier testimony reflects confusion which the affiant attempts to explain." Yatzus v. Appoquinimink Sch. Dist., 458 F. Supp. 2d 235, 247 (D. Del. 2006).

Applying these factors, the following discrepancies can be easily identified:

- Gun Ownership: In her declaration, Doe states that she currently owns a gun. (Doe Decl. ¶ 2.) In her deposition, however, Doe expressly stated that she did not currently own a gun, nor had she ever owned a gun. (A63; A70.)

- Notice of the New Policy: In her declaration, Doe stated that she did not receive notice that WHA had suspended the Original Policies,[2] and replaced them with the New Policy, until her deposition on January 19, 2011. (Doe Decl. ¶ 3.) In fact, she had actual notice as a party to this lawsuit. Defendant represented to the Court and Doe's counsel that it was not enforcing the Original Policies after the McDonald decision was issued. (D.I. 15; D.I. 20, ¶ 25; D.I. 32.)

- Retaliation: Doe for the first time apparently suggests that she has suffered retaliation by stating she was assessed miscellaneous fees for which she had not been previously charged. (Doe Decl. ¶ 5.) She fails to give any specifics about the fees, nor to set forth any basis for establishing that they were somehow retaliatory. In her deposition, Doe expressly stated that she had not suffered or been threatened with any adverse action as a result of her lawsuit. (A67-68.)

Doe was represented by counsel at the deposition. He had ample opportunity, and did, question his client. (A75.) Because the statements at issue in Doe's declaration are all within her

---

[2] As the Court will recall, Doe's original complaint cited the wrong lease provision. (D.I. 15.)

personal knowledge and experience, there can be no argument that relevant evidence was unavailable, or newly discovered. Her "declaration" shall therefore be disregarded as a sham.

Assuming, <u>arguendo</u>, that Ms. Doe's declaration is considered, there is still insufficient evidence to establish standing. Despite attempts to recast Mr. Boone's testimony, the deposition transcript shows that he does not object to any provision of the New Policy. (A51-52; A45-49.) Similarly, Ms. Doe stated that the only provision to which she objected was the common areas provision. (A71-74.) She then went on to state that she wouldn't display a firearm in a common area. (A65.) To have standing, Ms. Doe would therefore be required to obtain a permit to carry a concealed deadly weapon before she could carry a weapon in a community room. Her statement in her declaration suggesting that she believes that she would be eligible for permit to carry a concealed deadly weapon does not mean she in fact has a permit. Absent her actual receipt of the legally required permit, Ms. Doe's claim is speculative at best. Both Ms. Doe and Mr. Boone therefore lack standing to challenge the New Policy.

## II. COUNT ONE, ALLEGING A VIOLATION OF THE SECOND AMENDMENT, SHOULD BE DISMISSED BECAUSE THE NEW POLICY IS CONSTITUTIONAL UNDER ESTABLISHED THIRD CIRCUIT CASE LAW

Even if Plaintiffs have standing under Article III to maintain an action against Defendants based on the New Policy, Defendants are entitled to summary judgment on the five counts in Plaintiffs' Second Amended Complaint.[3]

### A. The New Policy Does Not Implicate Plaintiffs' Second Amendment Rights

The Third Circuit's decision in <u>U.S. v. Marzzarella</u> makes clear that constitutional scrutiny is only invoked if a challenged law affects a Second Amendment right. 614 F.3d 85, 89 (3d Cir. 2010). The right defined by the U.S. Supreme Court in <u>District of Columbia v. Heller</u> is

---

[3] Defendants also adopt the arguments presented by *amicus curiae* Brady Center to Prevent Gun Violence ("*Amicus Curiae*").

3

narrow, establishing only a right to bear arms in defense of hearth and home. 554 U.S. 570, 635 (2008).

Plaintiffs urge this Court to read the Second Amendment more broadly than did the Supreme Court. Plaintiffs argue that the limited right recognized by the Supreme Court, and advocated by Defendants, "would cross out the words 'bear arms' from the Second Amendment." (D.I. 100, p. 14.) The language of the New Policy, however, makes clear that Plaintiffs and all WHA tenants have the right to keep and bear arms in their homes, as required by the U.S. Supreme Court's decision in Heller. 554 U.S. at 635 ("whatever else it leaves to future evaluation, it surely elevates above all other interests the right of law-abiding, responsible citizens to use arms in defense of hearth and home").

Plaintiffs argue that the language of Heller must surely encompass broader rights than just the right to self defense in the home. In fact, the Fourth Circuit mere weeks ago cautioned against expanding the rights guaranteed by the Second Amendment absent guidance from the Supreme Court. U.S. v. Masciandaro, No. 09-4839, 2011 U.S. App. LEXIS 5964, at *45 (4th Cir. Mar. 24, 2011) ("On the question of Heller's applicability outside the home environment, we think it prudent to await direction from the Court itself") (citing Williams v. State, 10 A.3d 1167, 1177 (Md. 2011) and Sims v. U.S., 963 A.2d 147, 150 (D.C. 2008)).

In the alternative, Plaintiffs argue that despite the allegedly broad applicability of the Supreme Court's Heller decision, "public housing is, fundamentally, a home," and should be treated as such for Second Amendment purposes. (D.I. 100, p. 19.) The common areas in WHA buildings, however, are open to all tenants and guests. They are not Plaintiffs' private homes or residences. WHA properties contain "various community spaces such as daycare facilities,

4

libraries, and community rooms that play host to many of WHA's most vulnerable residents: the elderly and children." (D.I. 89, p. 15)

WHA's public housing facilities are also places of business. (See, e.g. D.I. 101, p. 10 ("a wide range of people have access to the common areas, including tenants, visitors, and WHA employees.")) The Park View not only includes housing units, but also management and leasing offices. Common areas are not part of a tenant's unit subject to inspection and maintenance. Thus, while a tenant's unit is treated as his or her home under the New Policy, the common areas are community spaces that WHA has the right and obligation to regulate.

The common areas in public housing are more akin to other government buildings and public parks, where people come to enjoy recreational activities or conduct business, and have an expectation of safety. The cases cited by *Amicus Curiae* are directly on point. See U.S. v. Dorosan, 350 Fed. App'x 874, 875 (5th Cir. 2009) ("Given this usage of the parking lot by the Postal Service as a place of regular government business, it falls under the 'sensitive places' exception recognized by Heller"); DiGiacinto v. George Mason Univ., 704 S.E.2d 365 (Va. 2011) (holding that the University is a "sensitive place," in part due to the "30,000 students enrolled ranging from age 16 to senior citizens"). As Defendants have made clear, governmental entities enjoy a much broader right to limit the possession and use of firearms in "sensitive places" such as those where children are present, or governmental business is conducted. See Marzzarella, 614 F.3d at 91 (holding that regulation of sensitive places falls outside the scope of the Second Amendment).

### B. Intermediate Scrutiny Is The Appropriate Standard Of Review

Even if this Court concludes that the challenged provision of the New Policy does implicate the Second Amendment, intermediate scrutiny should be applied because the New Policy does not impose a complete ban on the possession of weapons in the home. Id. at 96-97

5

(noting that strict scrutiny, if applicable at all, should be reserved for cases like Heller, involving a complete ban on possession).[4] As discussed above, common areas are not part of a tenant's "hearth and home"—restrictions on the possession and use of firearms in common areas are at most incidental to a tenant's right to bear arms as defined in Heller.

      **C.**      **The New Policy Is Narrowly Tailored To Effectuate A Substantial Governmental Interest, And Is Therefore Constitutional**

Plaintiffs argue that Defendants must present statistical evidence in support of the relationship between WHA's substantial interest in public safety, and the means used to effectuate that interest. However, "[a] state need not go beyond the demands of common sense to show that a statute promises directly to advance an identified government interest." IMS Health Inc. v. Ayotte, 550 F.3d 42, 55 (1st Cir. 2008) (citing Burson v. Freeman, 504 U.S. 191, 211 (1992)). Of course, when *Amicus Curiae* offer statistics in support of the proposition that more guns lead to more violence, Plaintiffs dismiss their argument as an attempt to use statistical data and sociological studies to "override a constitutional right." (D.I. 100, p. 27). Plaintiffs cannot have it both ways. There is ample evidence that the presence of guns leads to violence—the evidence to the contrary has been highly criticized by scholars.[5] No such evidence, however, is necessary in order for the New Policy to survive intermediate scrutiny. Common sense is

---

[4] In the event that the Court adopts a strict scrutiny standard, Defendants incorporate by reference the arguments in their Answering Brief, D.I. 101, p. 15).

[5] The research of John R. Lott, to whom Plaintiffs cite, has drawn particular attention under allegations that he falsified the data underlying his conclusions. Robert J. Spitzer, Historical Approach: Why history Matters: Sault Cornell's Second Amendment and the Consequences of Law Reviews, 1 Alb. Gov't L. Rev. 312, 348 (2008) ("Another researcher on gun control, economist John Lott, was charged with inventing poll data regarding the frequency with which citizens used guns to protect themselves. Lott's humiliation escalated when he admitted inventing a fictional defender, 'Mary Rosh,' whose comments appeared widely on the Internet extolling his work and criticizing his detractors."). See also Kevin P. LaTulip, Jr., Review of More Guns, Less Crime, 4 J. Health Care L & Pol'y 147, 154-57 (2000) (discussing flaws in Lott's methodology).

6

enough: WHA residents should not be subject to an increased risk of gun violence or accidents in common areas <u>outside</u> their homes.

Plaintiffs also challenge the principle that a government acting as a proprietor of land must be granted greater latitude in regulating conduct than a government acting as sovereign. Defendants provide no other argument than that the cases cited by Defendants are "too far afield." (D.I. 100, p. 30.) As the Supreme Court and Third Circuit have expressly stated, First and Fourth Amendment case law is particularly relevant to a Second Amendment analysis, and should be relied upon to guide courts in their resolution of Second Amendment challenges. <u>Marzzarella</u>, 614 F.3d at 89, n.4; <u>Heller</u>, 554 U.S. at 579, 582, 591 (drawing parallels between the First, Second and Fourth Amendments). First and Fourth Amendment case law makes clear that the distinction between the government role as a proprietor and as a sovereign is valid. See <u>Garcetti v. Ceballos</u>, 547 U.S. 410 (2006) (discussing the First Amendment); <u>O'Connor v. Ortega</u>, 480 U.S. 709 (1987) (discussing the Fourth Amendment). In the absence of other guidance from the courts, this Court should rely on First and Fourth Amendment case law to address the unique distinctions between government as landlord and government as sovereign.

### III. COUNT TWO SHOULD BE DISMISSED BECAUSE PLAINTIFFS CANNOT PROVE A VIOLATION OF THE DELAWARE STATE CONSTITUTION

It appears that Plaintiffs agree with Defendants that there is no applicable case law guiding this Court's decision on Plaintiffs' claim under Article I, § 20 of the Delaware State Constitution. Instead, Plaintiffs point to the "significantly broader" language of Section 20 as evidence that Defendants' conduct must violate the Delaware State Constitution. The "broader" language cited by Plaintiffs relates to hunting and recreational use, neither of which is at issue in this case. As Defendants have previously indicated, in the absence of any guiding state precedent, this Court should rely on Second Amendment jurisprudence in resolving Plaintiffs'

7

Article I, § 20 argument. Defendants therefore incorporate by reference the Second Amendment arguments contained in their Opening and Answering Briefs.

### IV. COUNTS THREE, FOUR, AND FIVE SHOULD BE DISMISSED BECAUSE THEY FAIL TO STATE INDEPENDENT CAUSES OF ACTION

#### A. Count Three Fails To State An Independent Cause Of Action, And Further Fails Because The Preemption Statutes Do Not Apply to Defendants

Preemption is a legal doctrine, not a cause of action, an assertion that Plaintiffs have not successfully rebutted. See, e.g. Black's Law Dictionary 1297 (9th ed. 2009) ("The principle (derived from the Supremacy Clause) that a federal law can supersede or supplant any inconsistent state law or regulation") (emphasis added). Regardless, preemption is inapplicable because Defendants have not engaged in any legislative activity. A.W. Fin. Servs., S.A. v. Empire Res., Inc., 981 A.2d 1114, 1121 (Del. 2009) ("Preemption refers to circumstances where the law of a superior sovereign takes precedence over the laws of a lesser sovereign") (emphasis added).

Plaintiffs' explicitly acknowledged in their Opening Brief that express preemption is inapplicable in the case at bar. (D.I. , p. 20 ("WHA is neither a municipal nor a county government").) Moreover, Plaintiffs' citation to the decisions of other states is irrelevant and unpersuasive in the face of the Delaware Supreme Court's express holding that WHA is a state agency, as opposed to a municipality or county government. Wilmington Hous. Auth. v. Williamson, 228 A.2d 782, 787 (Del. 1967) (superseded on other grounds, Fiat Motors of N. Am. v. Wilmington, 498 A.2d 1062 (Del. 1985)). (D.I. 40 ¶¶ 16, 28.)

Plaintiffs' "implied preemption" argument is equally unavailing—if the General Assembly intended to preempt WHA's regulation of weapons, it would have so stated. Criminal and professional statutes are an insufficient basis for the conclusion that WHA cannot regulate weapons anywhere on its property. Indeed, application of Plaintiffs' extreme position would

8

mean that residents could use and discharge weapons on WHA property for "hunting and recreational" purposes. Such an absurd conclusion cannot be inferred from the statutes on which Plaintiffs rely.

### B. Count Four Should Be Dismissed Because Title 31, Establishing WHA, Does Not Provide A Cause Of Action For Exceeding The Scope Of Authority

Plaintiffs' reading of Defendants' argument on this claim is intentionally narrow, and misconstrues Defendants' position. Defendants argue not that Plaintiffs have no private right of action against Defendants, but that they have no right of action for "exceeding the scope of their authority." The mere ability to sue and be sued does not create a cause of action. Nor have Plaintiffs cited any precedent for the existence of such a cause of action.

Plaintiffs' substantive argument is also misguided. Delaware law grants WHA "all the powers necessary or convenient to carry out and effectuate the purposes and provisions of this chapter." 31 Del. C. § 4308(a) (emphasis added). It would be unreasonable to conclude that in the face of such broad language, the General Legislature would have to designate all of the provisions that WHA may or may not include in a lease, or explicitly set forth all activities that WHA may engage in to carry out its mission. Id. The position Plaintiffs assert is not consistent with reason and common sense. Not surprisingly, there is no authority supporting it.

### C. Count Five, Seeking Declaratory Relief, Should Be Dismissed Because 10 Del. C. § 6501 Does Not Provide An Independent Cause of Action

While Plaintiffs dispute Defendants' argument that 10 Del. C. § 6501 does not provide an independent cause of action, Plaintiffs provide no case law to the contrary. Moreover, Plaintiffs concede the point when they state that they "do not assert declaratory relief as an independent cause of action." As a result, because all of Plaintiffs' substantive arguments fail on the merits, Plaintiffs' request for declaratory relief should be denied.

## CONCLUSION

For the reasons set forth in the brief above, Defendants respectfully request that summary judgment be granted in their favor and that Plaintiffs' Complaint be dismissed in its entirety.

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Barry M. Willoughby*
Barry M. Willoughby, Esquire (Bar I.D. 1016)
Lauren E. Moak, Esquire (Bar I.D. 5366)
The Brandywine Building, 17th Floor
1000 West Street
P.O. Box 391
Wilmington, DE 19899-0391
Telephone: (302) 571-6666
Facsimile: (302) 576-3345
E-mail: bwilloughby@ycst.com

*Attorneys for Defendants Wilmington Housing Authority and Frederick S. Purnell, Sr.*

Dated: April 13, 2011