## IN THE UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF DELAWARE

| | |
|---|---|
| JANE DOE and CHARLES BOONE, | : |
| | : |
| Plaintiffs, | : |
| | : |
| v. | : C.A. No. 1:10-cv-00473-LPS |
| | : |
| WILMINGTON HOUSING AUTHORITY and | : |
| FREDERICK S. PURNELL, SR., in his official | : |
| capacity as executive director of the | : |
| Wilmington Housing Authority, | : |
| | : |
| Defendants. | : |

## PLAINTIFFS' REPLY BRIEF IN SUPPORT OF PLAINTIFFS'
## MOTION FOR SUMMARY JUDGMENT

FOX ROTHSCHILD LLP
Francis G.X. Pileggi (Del. Bar No. 2624)
Carl D. Neff (Del. Bar No. 4895)
919 North Market Street, Suite 1300
Wilmington, Delaware  19801
(302) 655-3667

*Attorneys for Plaintiffs Jane Doe*
*and Charles Boone*

Dated:  April 13, 2011

# <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ............................................................................................... ii

ARGUMENT ...................................................................................................................... 1

I.      PLAINTIFFS' CHALLENGE TO THE ORIGINAL POLICIES IS NOT
RENDERED MOOT BY DEFENDANTS' VOLUNTARY CESSATION
OF SAME .................................................................................................... 1

      A.    Defendants Have Already Repeated the Challenged Conduct Through
the Implementation of the Common Area Provision ................................... 1

      B.    Alternatively, Defendants Have Not Demonstrated that there is No
Reasonable Expectation that the Wrong will be Repeated ......................... 2

II.     THE ORIGINAL POLICIES AND THE COMMON AREA PROVISION OF
THE NEW POLICY ARE UNLAWFUL UNDER THE SECOND
AMENDMENT .......................................................................................... 4

      A.    The Original Policies Violate the Second Amendment ............................... 4

      B.    The Common Area Provision of the New Policy Violates the Second
Amendment ................................................................................................ 5

            1.    Strict Scrutiny is the Appropriate Level of Scrutiny ...................... 5

            2.    The Common Area Provision Imposes a Burden on Conduct
Falling Within the Scope of the Second Amendment's
Guarantee ...................................................................................... 5

            3.    There is No "Reasonable Fit" Between the Common Area
Provision and the Government's Asserted Interest in
Promoting Safety, as Required by Intermediate Scrutiny ............... 7

      C.    The New Policy Predicates Receipt of Governmental Benefits Upon
Waiver of Fundamental Rights ................................................................... 8

III.    THE ORIGINAL POLICIES AND THE COMMON AREA PROVISION
VIOLATE ARTICLE I, § 20 OF THE DELAWARE CONSTITUTION ............. 9

IV.    DEFENDANTS' POLICIES ARE PREEMPTED BY STATE LAW ................. 10

CONCLUSION ................................................................................................................... 10

## TABLE OF AUTHORITIES

CASES                                                                                           PAGE(S)

*Annex Books, Inc. v. City of Indianapolis,*
  581 F.3d 460 (7th Cir. 2009) ...............................................................................7

*Bd. of Trs. of State Univ. of N.Y. v. Fox,*
  492 U.S. 469 (1989)...........................................................................................7

*Chi. United Indus. v. City of Chicago,*
  445 F.3d 940 (7th Cir. 2006) ..............................................................................3

*City of Mesquite v. Aladdin's Castle, Inc.,*
  455 U.S. 283 (1982)...........................................................................................2

*Dickerson v. State,*
  975 A.2d 791 (Del. 2009) ...................................................................................9

*District of Columbia v. Heller,*
  554 U.S. 570 (2008)................................................................................5, 6, 7, 8

*DuPont v. DuPont,*
  85 A.2d 724 (Del. 1951) ...................................................................................10

*Groh v. Ramirez,*
  540 U.S. 551 (2004).........................................................................................10

*Harrell v. Florida Bar,*
  608 F.3d 1241 (11th Cir. 2010) ..........................................................................3

*Holt v. Richmond Redev. & Hous. Auth.,*
  266 F. Supp. 397 (E.D. Va. 1966) ......................................................................9

*IMS Health Inc. v. Ayotte,*
  550 F.3d 42 (1st Cir. 2008).................................................................................7

*Jannuzzio v. Hackett,*
  82 A.2d 730 (Del. Ch. 1951)............................................................................10

*McDonald v. City of Chicago,*
  130 S. Ct. 3020 (2010)................................................................................4, 6, 9

*Northeastern Florida Chapter of the Associated General Contractors of America v.
  City of Jacksonville, Florida,*
  508 U.S. 656 (1993).......................................................................................1, 2

*Pickering v. Board of Education*,
391 U.S. 563 (1968).................................................................................8

*Troriano v. Supervisor of Elections*,
382 F.3d 940 (7th Cir. 2006) ...................................................................3

*United States v. Lanier,*
520 U.S. 259 (1997).................................................................................10

*United States  v. Masciandaro*,
No. 09-4839, 2011 WL 1053618 (Mar. 24, 2011, 4th Cir. 2011)............6

*United States v. Marzzarella*,
614 F.3d 85 (3d Cir. 2010).....................................................................5, 6

*United States v. Skoien*,
587 F.3d 814 (7th Cir. 2009) ...................................................................7

*United States v. Skoien*,
614 F.3d 638 (7th Cir. 2010) (*en banc*) .................................................7, 8

*United States v. W. T. Grant Co.,*
345 U.S. 629 (1953)..................................................................................2


CONSTITUTIONAL PROVISIONS

DEL. CONST. art. I, § 20 ...........................................................................9, 10


STATUTES AND RULES

18 U.S.C.A § 922(g)(9)...............................................................................7

24 C.F.R. § 966.3 .......................................................................................3


OTHER AUTHORITIES

RANDY J. HOLLAND, THE DELAWARE CONSTITUTION: A REFERENCE GUIDE,  67 (2002)
(Article 1, § 20)........................................................................................9

H.B. 554, Del. House of Rep., 113th General Assembly (1986) ................10

<u>**ARGUMENT**</u>

**I.    PLAINTIFFS' CHALLENGE TO THE ORIGINAL POLICIES IS NOT
       RENDERED MOOT BY DEFENDANTS' VOLUNTARY CESSATION OF SAME**

    **A.    Defendants Have Already Repeated the Challenged Conduct
       Through the Implementation of the Common Area Provision**

Defendants' assertion that they have met their "heavy burden" of demonstrating that "there is no reasonable expectation that the wrong will be repeated"[1] must be rejected by this Court.  By implementing the unconstitutional Common Area Provision of the New Policy, the challenged unlawful conduct has **already** been repeated.  Accordingly, this Court should reject Defendants' argument, and issue a ruling on the validity of the Original Policies.

This Court should look to the guidance of the United States Supreme Court in *Northeastern Florida Chapter of the Associated General Contractors of America v. City of Jacksonville, Florida*, 508 U.S. 656 (1993), where that Court held that its consideration of a repealed ordinance was not rendered moot in an analogous situation.  In that case, an association of general contractors brought an action against the city of Jacksonville, Florida challenging an ordinance according preferential treatment to certain minority-owned businesses in award for city contracts.  *See id.*  After commencement of the case, the City repealed the ordinance, but enacted a different ordinance which accorded preference to a smaller class of minorities than the previous ordinance.  *See id.*  Despite the fact that the original ordinance was officially repealed by the City, the Supreme Court ruled that the contractors' challenge to the original ordinance was not moot, because: "[t]here is no mere risk that Jacksonville will repeat its allegedly wrongful conduct; <u>it has already done so</u>." *Northeastern Florida*, 508 U.S. at 662 (emphasis added).

Similarly, in light of Defendants' implementation of the unconstitutional Common Area Provision of the New Policy, Defendants have already repeated their unlawful conduct.  As was

1

the case in *Northeastern Florida*, there is no "mere risk" that Defendants will repeat their allegedly unlawful conduct—through the enactment of the unconstitutional Common Area Provision of the New Policy, they have already done so.  *See id.*

Nor does it matter that the New Policy differs in certain respects from the Original Policies: in *Northeastern Florida*, the Supreme Court stated that its prior decision in *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283 (1982) "does not stand for the proposition that it is only the possibility that the *selfsame* statute will be enacted that prevents a case from being moot".  *Id.*  While the New Policy may disadvantage Plaintiffs to a lesser degree than the Original Policies, insofar as it continues to restrict their Second Amendment rights, "it disadvantages them in the same fundamental way", and accordingly the wrong has **already** been repeated.  *Id.*

### B.   Alternatively, Defendants Have Not Demonstrated that There is No Reasonable Expectation that the Wrong will be Repeated

Even if this Court determined that the implementation of the Common Area Provision did not constitute repeated unlawful conduct, Plaintiffs' challenge to the Original Policies is not moot because Defendants have not met their "heavy burden" of demonstrating that "there is no reasonable expectation that the wrong will be repeated."  *W. T. Grant Co.,* 345 U.S. at 633.

Defendants make a strained argument that a "public official's"[2] unencumbered assertion that the wrongful conduct has ceased is sufficient to meet this "heavy burden".  However, neither the Third Circuit, nor the Supreme Court, has held that the voluntary cessation of unlawful conduct by a "public official" renders moot any challenges to same.  Tellingly, Defendants cite

---

[1] *U.S. v. W. T. Grant Co.,* 345 U.S. 629, 633 (1953).
[2] Defendants provide no definition of a "public official", nor is such a definition made readily apparent in any of the cases Defendants cite in their Answering Brief as to this issue.  Notably, this is the first instance in which Defendants have referred to themselves in this fashion.

2

to no such controlling decisions of these Courts in their Answering Brief supporting this position.[3]

Further, Defendants cite to no case law holding that a housing authority should be given the same deference that cities or other governmental entities have been afforded.[4] This is not surprising, as the repeal of an ordinance or statute would constitute a much more complex procedure than the revision of a lease.[5]

However, even if this Court were to rule that Defendants should enjoy the same "deference" given to cities and other governmental entities by the Seventh and Eleventh Circuits in this context, such deference is nonetheless rebuttable. *See Harrell v. Florida Bar*, 608 F.3d 1241, 1267 (11th Cir. 2010) (attorney's challenge to the Florida Bar's rejection of such attorney's slogan was not moot even after the Bar's repeal of the rejection). In *Harrell*, the Eleventh Circuit questioned whether the Bar's decision was "well-reasoned" in determining that the underlying challenge was not moot, as the Bar failed to disclose any reason for its decision to repeal the rejection of the attorney's slogan. *See id.* at 1266.

As in *Harrell*, any deference given to Defendants should be rebutted by their questionable decision-making practices. It is readily apparent here that Defendants failed to consider statistics, data, or any other evidence in formulating or implementing the Common Area

---

[3] The two cases cited by the Defendants—*Troriano v. Supervisor of Elections*, 382 F.3d 1276 (11th Cir. 2004), and *Chi. United Indus. v. City of Chicago*, 445 F.3d 940 (7th Cir. 2006)—are not Third Circuit decisions, and have no precedential bearing on this Court's decision.

[4] Generally, legislative bodies and the top executive of city governments are elected, making them responsive to voters; to the contrary, the WHA Board of Commissioners and Executive Director are appointed to their respective terms, and do not have to justify their actions to the voting public.

[5] *See* 24 C.F.R. § 966.3 (30 day period for public comment required prior to amending a public housing lease). Also, it is ironic that Defendants take this position, as it is inconsistent with their argument that they are not subject to preemption due to the legislature's regulatory scheme because they are <u>not</u> a governmental body. (D.I. 102 at 18.)

Provision.  In fact, many of the Commissioners—those who voted on the New Policy—were even unclear of the purpose of the New Policy.[6]

Finally, this Court should rule upon the Original Policies, because without a ruling from this Court to the contrary, nothing would prevent Defendants from unconstitutionally revising the New Policy at a subsequent date.  Accordingly, Plaintiffs are entitled to an adjudication by this Court as to the constitutionality of the Original Policies.

## II.     THE ORIGINAL POLICIES AND THE COMMON AREA PROVISION OF THE NEW POLICY ARE UNLAWFUL UNDER THE SECOND AMENDMENT

### A.     The Original Policies Violate the Second Amendment

Despite Defendants' contentions, the Original Policies violated the Second Amendment under pre-*McDonald* precedent.[7]  The Second Amendment has always been available to the States through the process of "selective incorporation" under the Due Process Clause; *McDonald* simply confirmed this fact.  *See McDonald v. City of Chicago*, 130 S. Ct. 3020, 3030 (2010) ("we have never previously addressed the question whether the right to keep and bear arms applies to the States under [the process of selective incorporation under the Due Process Clause]").

Further, Mr. Boone has suffered harm as a result of the Original Policies.  While Defendants may have allegedly suspended the Original Policies prior to Mr. Boone's involvement with this action, no notice was ever provided to him until his deposition.  Moreover, the New Policy was not enacted until months after Mr. Boone joined this action.  Therefore, as a result of Defendants' failure to adequately provide Mr. Boone with notice of any suspension of

---

[6] *See* footnote 18 to Plaintiffs' Opening Brief, citing to deposition testimony of various Commissioners indicating that they were unsure of the purpose behind the implementation of the New Policy.

[7] As explained elsewhere by Plaintiffs, the Delaware Constitution and statutes were an independent basis to invalidate the Original Policies.

4

the Original Policies, and the delay in which the New Policy was adopted, Mr. Boone is entitled

to relief from harm suffered as a result of the Original Policies.

### B. The Common Area Provision of the New Policy Violates the Second Amendment

#### 1. Strict Scrutiny is the Appropriate Level of Scrutiny

For the reasons stated in Plaintiffs' Opening Brief and Answering Brief, this Court should

apply strict scrutiny in this case, which would require Defendants to show that the Common Area

Provision is "narrowly tailored to serve a compelling state interest." *See United States v.*

*Marzzarella*, 614 F.3d 85, 99 (3d Cir. 2010) (citation omitted).

Defendants' assertion that intermediate scrutiny should apply must be rejected by this

Court.  The Common Area Provision imposes a *de facto* complete ban on the possession of

firearms in common areas (with the limited exception of when individuals are walking to or from

their residential unit).  That is, no use of firearms for self-defense is allowed in the common

areas under the New Policy for anyone not "just passing through", as discussed in Plaintiffs'

Opening Brief.[8]  Therefore, the strict scrutiny standard must be applied to this matter.[9]

#### 2. The Common Area Provision Imposes a Burden on Conduct Falling Within the Scope of the Second Amendment's Guarantee

Defendants' assertion that the Common Area Provision falls outside the scope of the

Second Amendment overlooks the "central holding" of *Heller*—that "the Second Amendment

protects a personal right to keep and bear arms for <u>lawful purposes, most notably</u> for self-defense

---

[8] The Common Area Provision effectively eliminates a WHA resident's ability to defend herself with a firearm in the "common areas" of her residential facility, "mak[ing] it [virtually] impossible for [her] to use [arms] for the core lawful purpose of self-defense." *Heller*, 554 U.S. at 630.

[9] In response to footnote 5 of Defendants' Answering Brief, Plaintiffs disagree with Defendants' mischaracterization of the discussion of the Original Policies and the New Policy in juxtaposition with post-Civil War bans prohibiting firearms possession by African-Americans.  Plaintiffs instead described the history of post-Civil War legislation and the cases related to that legislation, as well as commentary by constitutional scholars regarding the *de facto* consequences of past unconstitutional restrictions.

within the home." *See McDonald*, 130 S. Ct. at 3044 (emphasis added); *see also District of Columbia v. Heller*, 554 U.S. 570, 599 (2008) ("[t]he prefatory clause does not suggest that preserving the militia was the only reason Americans valued the ancient right; most undoubtedly thought it even more important for self-defense and hunting.").

   *U.S. v. Masciandaro*, No. 09-4839, 2011 WL 1053618 (Mar. 24, 2011, 4th Cir. 2011)[10] is inapposite: its statements regarding whether and to what extent a Second Amendment right extends outside of one's home were simply *dicta*. *See Masciandaro*, 2011 WL 1053618 at *17 ("[t]here is no such necessity … to expound on where the *Heller* right may or may not apply outside the home. . . ."). To the contrary, the issue of whether a Second Amendment right may exist in the common area of a residential building is squarely before this Court, and *Masciandaro* provides no guidance to this analysis. Accordingly, this Court should adopt Plaintiffs' analysis of *Heller* in determining that an individual's Second Amendment rights extend to the common areas of a residential building in which they live, and reject any implication by Defendants that *Masciandaro* holds otherwise.

   *Heller* provides a right to possess firearms in "common areas" for self-defense, including community rooms, lobbies, courtyards, the steps outside of one's house, and the land immediately surrounding such steps. *See also McDonald*, 130 S. Ct. at 3044 (the right is guaranteed "most notably for self-defense within the home": which necessarily implies a right to bear arms outside of one's home). *Heller*'s central holding is broad enough to protect the lawful purpose Plaintiffs are seeking to exercise: the right to possess a firearm in the common areas of their residential property in anticipation of needing to use it in self-defense within the building and immediately adjacent space that constitutes their home and living space.

---

[10] As a Fourth Circuit case, it has no precedential bearing on this Court's interpretation of *Heller* and the Second Amendment—only *Heller*, *McDonald* and *Marzzarella* control this Court's analysis.

3.      **There is No "Reasonable Fit" Between the Common Area Provision and the Government's Asserted Interest in Promoting Safety, as Required by Intermediate Scrutiny**

Defendants casual reliance on what they refer to as ***common sense***[11] to demonstrate a "reasonable fit" between asserted governmental interests of promoting "health, welfare and safety", and the restrictions set forth in the Common Area Provision, simply fails to meet the constitutionally-mandated requirements of the heightened scrutiny standards.[12]   Absent **any** quantifiable evidence, statistics, or any other justification supporting these restrictions infringing upon Second Amendment rights, this Court must strike down the Common Area Provision.

Defendants' analysis of the *en banc* decision of *U.S. v. Skoien*, 614 F.3d 638 (7th Cir. 2010) (*en banc*), to support their argument that no evidence need be provided to support the public benefits of the restrictions, misconstrues the central holding of that decision.[13]   *Skoien* (*en banc*) determined that *Heller* acknowledged certain longstanding categorical limits of Second Amendment rights, and analyzed whether 18 U.S.C.A. § 922(g)(9)—a statute making it unlawful for an individual convicted of domestic violence to carry firearms—was proper under the Second Amendment.   The language in *Heller* stating: "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons" was interpreted by

---

[11] *IMS Health Inc. v. Ayotte*, 550 F.3d 42 (1st Cir. 2008), which was cited by Defendants to support the notion that the government may rely upon "common sense" to show that a statute advances an identified government interest, solely applies to the regulation of commercial speech, and has no application here. Defendants have not cited to, nor are Plaintiffs aware, of any case allowing for the government to rely solely upon "common sense" to justify a statute restricting Second Amendment rights.

[12] "The government 'bears the burden of justifying its restrictions, [and] it must <u>affirmatively establish</u> the reasonable fit' that the test requires."   *Skoien*, 587 F.3d at 814 (quoting *Bd. of Trs. of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 480 (1989)) (emphasis added) (vacated <u>on other grounds</u>).   "[T]he public benefits of the restrictions must be <u>established by evidence</u>, and <u>not just asserted</u>".   *Id*. (quoting *Annex Books, Inc. v. City of Indianapolis*, 581 F.3d 460, 463 (7th Cir. 2009)) (emphasis added).

[13] Defendants fail to note that the Seventh Circuit considered much statistical data in their *en banc* decision, including, among other things, data indicating that: (i) 8% of officers' fatalities from illegal conduct during 1999 through 2008 arose from attempts to control domestic disturbances; and (ii) estimates of recidivism rates ranging from 40% to 80%.   *See generally Skoien*, 614 F.3d 638 (*en banc*) (citing various sources).

7

the Seventh Circuit to indicate that the Supreme Court supported certain longstanding categorical limitations on the Second Amendment, including the possession of firearms by known felons. *Heller*, 554 U.S. at 626.

This decision is inapposite, however, because the restriction on the possession of firearms imposed on **all** residents of a public housing authority has never represented a longstanding categorical limit of the Second Amendment.  Here, the Second Amendment rights of all WHA residents are being infringed without any apparent justification, such as previous criminal history or mental illness: instead, it is simply presumed that all WHA residents will commit a violent crime.   Given that Defendants provide **zero** crime statistics,[14] hard evidence, or any other documented justification for implementing the Common Area Provision—other than alleged ***common sense***—this Court should determine that Defendants have not met their burden of justifying such restrictions.  *See Skoien* (*en banc*), 614 F.3d at 641 ("[i]f a rational basis were enough, the Second Amendment would not do anything").   Accordingly, the Common Area Provision does not pass constitutional muster under either of the heightened scrutiny standards.

### C.    The New Policy Predicates Receipt of Governmental Benefits Upon Waiver of Fundamental Rights

Defendants reliance upon *Pickering v. Board of Education*, 391 U.S. 563 (1968) is flawed to the extent they use it to support their argument that Second Amendment rights can be subjected to "time, place, and manner" restrictions, in the same way that First Amendment rights can be restricted in a place of public employment.  The importance and sanctity of one's "hearth and home" cannot be readily analogized to a place of public employment, where individuals are paid for their time to perform services in a public space for a public employer.  *See generally*

---

[14] Well documented statistics show that _restrictions_ on lawful firearms possession are often correlated with an _increase_ in violent crime, particularly in urban areas with historically high crime rates.  *See* Plaintiffs' Answering Brief, at 28.

*McDonald*, 130 S. Ct. at 3044 (placing great emphasis on the right to keep and bear arms for self-defense within one's home); *see also Holt v. Richmond Redev. & Hous. Auth.*, 266 F. Supp. 397, 401 (E.D. Va. 1966) ("a tenant's continued occupancy in a public housing project cannot be conditioned upon the tenant's foregoing his [First Amendment] rights").

No Court has ever applied the "time, place, and manner" restrictions to the Second Amendment. This Court should not be the first to do so. Alternatively, even were this Court to be the first to apply this restriction here, such restrictions could still not apply: the common areas of WHA property are not "sensitive places",[15] and the Common Area Provision places a <u>complete</u> *de facto* ban on the possession of firearms in the common areas for self-defense, as opposed to banning the "time, place, and manner" of such possession. Accordingly, this Court should reject Defendants' analogy of this instant matter to "time, place, and manner" restrictions of the First Amendment, and hold that Plaintiffs have been forced to trade a fundamental constitutional right for the benefit of low-rent government housing.

## III. THE ORIGINAL POLICIES AND THE COMMON AREA PROVISION VIOLATE ARTICLE I, § 20 OF THE DELAWARE CONSTITUTION

Despite Defendants' contentions,[16] prior cases are not needed to understand the explicit language that "a person has the right to keep and bear arms. . . ."). DEL. CONST. art. I, § 20.[17] "[B]road constitutional requirements" may be "'made specific' by the text or settled interpretations," and thus officials who violate them certainly are in no position to say that they

---

[15] *See* Plaintiffs' Answering Brief, § II(B)(3).

[16] In footnote nine of Defendants' Answering Brief, Defendants incorrectly summarize *Dickerson v. State*, 975 A.2d 791, 796 (Del. 2009). In that case, the Delaware Supreme Court declined to decide the issue of whether "the Delaware Constitution permits carrying a concealed deadly weapon <u>inside</u> one's home without a license. . . .") (emphasis in original).

[17] *See* RANDY J. HOLLAND, THE DELAWARE CONSTITUTION: A REFERENCE GUIDE, 67 (2002) (Article I, § 20 "affords greater protections under the Delaware Constitution than the protection of the Second Amendment. . . .").

had no adequate advance notice. . . ."  *United States v. Lanier*, 520 U.S. 259, 267 (1997) (citation omitted).[18]

In fact, the official synopsis described Article I, § 20 as "a constitutional amendment that explicitly protects the traditional lawful right to keep and <u>bear</u> arms."  H.B. 554, Del. House of Rep., 113th General Assembly (1986) (emphasis added).  While defendants appear to find this traditional right to be undesirable, "if constitutional guarantees are to mean anything, they must be applied despite the social undesirability of the conduct under attack."  *Jannuzzio v. Hackett*, 82 A.2d 730, 737 (Del. Ch. 1951).[19]

Plaintiffs fully incorporate their arguments regarding the Second Amendment set forth in prior briefing and submissions in this case, and respectfully request that this Court hold that both the Original Policies and the Common Area Provision violate Article I, § 20 of the Delaware Constitution.

## IV.   DEFENDANTS' POLICIES ARE PREEMPTED BY STATE LAW

Plaintiffs refer the Court to the discussion in their Opening and Answering Briefs that Defendants' actions are preempted by state law through express and implied preemption.

## <u>CONCLUSION</u>

For the foregoing reasons and the reasons stated in Plaintiffs' Opening Brief and Answering Brief, Plaintiffs respectfully request that Plaintiffs' motion for summary judgment be granted, and that Defendants' motion for summary judgment be denied.

---

[18] *See Groh v. Ramirez*, 540 U.S. 551, 563 (2004) ("[g]iven that the particularity requirement is set forth in the text of the Constitution, no reasonable officer could believe that a warrant that plainly did not comply with that requirement was valid.").

[19] "We think it fundamental in our theory of constitutional government that the basic purpose of a written constitution has a two-fold aspect, first, the securing to the people of certain unchangeable rights and remedies, and second, the curtailment of unrestricted governmental activity within certain defined fields."  *DuPont v. DuPont*, 85 A.2d 724, 728 (Del. 1951).

10

FOX ROTHSCHILD LLP


By:     */s/ Francis G.X. Pileggi*
       Francis G.X. Pileggi (Del. Bar No. 2624)
       Carl D. Neff (Del. Bar No. 4895)
       919 North Market Street, Suite 1300
       Wilmington, Delaware  19801
       (302) 655-3667

       *Attorneys for Plaintiffs Jane Doe*
       *and Charles Boone*


Dated:  April 13, 2011