

Eckert Seamans Cherin & Mellott, LLC
300 Delaware Avenue, Suite 1210
Wilmington, DE 19801

TEL 302 425 0430
FAX 302 425 0432
www.eckertseamans.com

Francis G.X. Pileggi
fpileggi@eckertseamans.com
www.delawarelitigation.com
(302) 655-3667

July 22, 2011

VIA CM/ECF AND HAND DELIVERY

The Honorable Leonard P. Stark
United States District Judge
United States District Court
    for the District of Delaware
Unit 26, Room 6124
844 N. King Street
Wilmington, DE 19801-3556

Re:   *Doe v. Wilmington Housing Authority, et al.*,
      **D. Del., C.A. No. 1:10-cv-00473-LPS**

Dear Judge Stark:

In response to Your Honor's request after oral argument last week on cross motions for summary judgment, the parties submit this "joint letter" with the parties' positions on the interfacing of Delaware's statutory provisions requiring a permit to carry a concealed deadly weapon ("CCDW"), 11 DEL. C. § 1441, and DEL. CONST. art. I, § 20, and any right to "openly carry" a firearm.

The parties' separate views on these issues are as follows:

### Plaintiffs' Position

In Delaware the right to openly carry firearms stems from rights recognized by the Delaware Constitution – and not limited by any proper authority.[1] The Delaware Constitution recognizes the right to "keep and bear arms." Art. I, § 20. Delaware's CCDW law restricts the right to carry *concealed* weapons, but does not restrict the right to openly carry weapons. *See* § 1441. Any restriction on the possession of firearms imposed by an entity with power that is inferior to the state, is preempted.[2] Delaware has not enacted a law that prohibits "open carry," nor does Delaware law

---

[1]   This reading of the Delaware Constitution is supported by several Delaware decisions. *See In re Application of McIntyre*, 552 A.2d 500, 501 n.1 (Del. Super. 1988) ("The Court notes that 'the right to keep and bear arms' does not of necessity require that such arms may be kept concealed. 11 DEL. C. § 1441 relates only to the carrying of concealed deadly weapons . . . ."); *State v. Griffin*, 2011 Del. Super. LEXIS 193, *15-16 (Del. Super. May 16, 2011) (same).

[2]   *See* 22 DEL. C. § 111 ("The municipal governments shall enact no law, ordinance or regulation prohibiting, restricting or licensing the ownership, transfer, possession or transportation of firearms . . . ."); 9



The Honorable Leonard P. Stark
July 22, 2011
Page 2

require a license or permit for the open possession of a rifle, shotgun or handgun, but the right to "open carry" is not unfettered, and various related statutes make the contours of the right less than clear.

Theoretically, any person other than a "person prohibited" under applicable Delaware law, could openly carry a gun while walking through Rodney Square in Downtown Wilmington. *See* 11 DEL. C. § 1448 (effective Sept. 1, 2011) (identifying "persons prohibited"). However, any person attempting to do so would most likely be detained or at a minimum, attract the attention of the nearest police officer. In more instances than one might imagine, even police officers are not familiar with the right to openly carry a gun in Delaware, and a quick review of criminal statutes that impact "open carry" rights will illuminate the point.

Any person who wishes to exercise their rights to "open carry" in Delaware runs the risk of being detained or arrested (perhaps unjustly) for a number of criminal offenses that could be based on an officer's subjective impression of the situation. For instance, if a police officer believes that a person openly carrying a firearm intends to: "place[] another person in fear of imminent physical injury" (11 DEL. C. § 602(a)); "to cause anxiety, unrest, fear or personal discomfort to any person or group of persons" (11 DEL. C. § 622); or "cause[] public inconvenience, annoyance or alarm to any other person, or create[] a risk thereof" (11 DEL. C. § 1301), that person might be arrested and charged with menacing, hoax or disorderly conduct (respectively).

A very recent Delaware court decision recognized the tension between the theoretical and the practical aspects of this issue. "To be sure, any discussion of open carry rights has a certain air of unreality. In many places, carrying openly is likely to frighten many people, and to lead to social ostracism as well as confrontations with the police." *Griffin*, 2011 Del. Super. LEXIS 193, at *52 n.87 (quoting Eugene Volokh, *Implementing the Right to Keep and Bear Arms for Self Defense: An Analytical Framework and a Research Agenda*, 56 UCLA L. Rev. 1443, 1521 (2009)).

With the foregoing preface in mind, the answer to Your Honor's question at oral argument as to whether it is lawful to walk into the common rooms or common areas governed by the unlawful policy of the Wilmington Housing Authority while openly carrying a firearm, does not lend itself to a simple answer.[3] In theory, it may be possible, but in reality, it may be risky.

---

DEL. C. § 330(c) ("The county governments shall enact no law or regulation prohibiting, restricting or licensing the ownership, transfer, possession or transportation of firearms . . ..").

[3] In a decision earlier this month that was referenced during oral argument by plaintiffs' counsel, a federal appellate court applying an intermediate level of constitutional analysis post-*McDonald v. City of Chicago*, 130 S. Ct. 320 (2010), explained that "common sense" is not sufficient justification for enacting ordinances that limit a person's constitutional rights. *See Ezell v. City of Chicago*, 2011 U.S. App. LEXIS 14108, * 61-63 (7th Cir. July 6, 2011) (holding that evidence is required to support alleged "safety concerns," and emphasizing that: "In the First Amendment context, the government must supply actual, reliable evidence to justify restricting protected expression based on secondary public-safety effects.").



The Honorable Leonard P. Stark
July 22, 2011
Page 3

For the first time – during their rebuttal argument before Your Honor last week – defendants' counsel asserted that WHA adopted the New Policy (prohibiting the possession of firearms in the common areas for self-defense) in order to prevent the open carrying of firearms. The evidentiary record does not support this *post hoc* justification. *See AFL-CIO Joint Negotiating Comm. for Phelps Dodge v. NLRB*, 470 F.2d 722, 725 (3d Cir. 1972) ("[C]ounsel for the Board has advanced an argument in support of the Board's order that is really a rationalization of the Board's decision. We may not consider such an argument. An administrative order cannot be upheld unless the grounds upon which the agency acted . . . were those upon which its action can be sustained. We cannot accept counsel's *post hoc* rationalizations for agency action.") (internal citations omitted).

Plaintiffs make two additional points in reply to this newly disclosed justification. First, according to WHA's counsel, WHA now claims that it was justified in enacting the New Policy because WHA feared that its residents would exercise their rights under the Delaware Constitution and openly carry guns in the common areas. This argument fails due to preemption and because WHA does not have the authority to impose rules for the purpose of restricting constitutional rights.

Second, assuming *arguendo* that WHA's counsel was correct in stating that, under the current state of the law, Jane Doe can walk into the common area openly carrying a gun, WHA's counsel thereby has defeated his own standing argument (as set out in Defendants' briefs). If Jane Doe can carry a gun in the common areas without a CCDW permit, then Defendants cannot challenge Plaintiffs' standing to challenge WHA's policies on this point.

To summarize, while the parties appear to agree that Delaware does not categorically condemn the right to openly carry a firearm, it may not be advisable to exercise this theoretical right by one seeking to "avoid trouble," especially elderly residents[4] on a fixed income concerned about the risk of eviction, (which would likely result in homelessness).

WHA's assertion, *infra*, that Plaintiffs objected to the "open carry" of firearms in WHA's common areas is a mischaracterization. At best, Plaintiffs' testimony about displaying a weapon in the common areas was inconclusive. (*See* Doe Tr. at 14:14-15:21). Nor does WHA use the two words "open carry" together in their briefs or in their deposition references. The phrase "open carry" is a term of art and attempting to encompass the full history of that phrase in the word "display" is insufficient. WHA's summaries of Plaintiffs' deposition testimony, as well as generally referring to the display of firearms in its briefs, is not the same as using the "open carry" argument.

---

[4] The elderly residents at WHA facilities such as plaintiffs are among the easiest prey for those committing crimes against persons, and thus are in greater need of their right to self-defense compared to other residents.



The Honorable Leonard P. Stark
July 22, 2011
Page 4

## Defendants' Position

Delaware law does not include any restriction on a resident's right to openly carry a fire arm, except where state or federal law impose restrictions on certain prohibited persons and prohibited places.

Defendants believe that Plaintiffs are improperly attempting to reargue issues that were already presented in the briefing and argument before the Court. For example, Plaintiffs attempt to use their submission to reassert their non-meritorious "preemption" argument even though this argument has no apparent connection to the issue the Court asked the parties to address. The parties have thoroughly addressed this and many other issues Plaintiffs have raised in their argument of this letter. Defendants respond to Plaintiffs arguments set forth above as follows.

First, Plaintiffs concede that there is no statutory or other restriction on the open carry of weapons in Delaware. It is therefore conceded that a WHA resident is not restricted by law from openly carrying a weapon into common areas, such as the community rooms, in WHA properties. This admission demonstrates and supports one of the justifications and need for the WHA Weapons Policy. Absent the WHA Weapons Policy now before the Court, residents would be free to openly display firearms anywhere on WHA property.

Plaintiffs' citation to *Griffith*, 2011 Del. Super. LEXIS 193, at 52 proves the need for Defendants' policy. The Court acknowledged that open display of weapons is likely to frighten and cause alarm. Nothing in *Griffith*, however, suggests that its unlawful for an individual to openly display a weapon in Delaware. In fact, in the law review article Plaintiffs cite, it is acknowledged that there is a movement among gun enthusiasts to openly display their firearms, apparently, in many cases, to make the point that they can do so. Volokh, *Implementing the Right to Keep and Bear Arms for Self Defense: An Analytical Framework and a Research Agenda*, 56 U.S.C.A. L. Rev. 1443, 1522 (2009).

Second, Plaintiffs' contention that Delaware's lack of regulation of open carry of weapons is somehow related to the Delaware Constitution, Article I, §20, is without merit. There is no case or other authority for the proposition that the General Assembly could not enact a statute, for example, requiring individuals to have a license or permit to openly display weapons just as it has done with the licensing requirements to carry a concealed deadly weapon. Neither of the cases Plaintiffs cite in their argument section support the proposition that the General Assembly is restricted from enacting a statute requiring licensing and regulation for open carry of weapons. In Defendants' view, Plaintiffs' have advanced this non-meritorious position for the purpose of suggesting that the Delaware constitutional provision includes greater restrictions than it does in reality.

Third, Plaintiffs suggest that Defendants have "raised for the first time" that the need to regulate open display of weapons is part of the justification for the policy. This contention is demonstrably wrong. For example, both Plaintiffs were questioned at their depositions about



The Honorable Leonard P. Stark
July 22, 2011
Page 5

WHA's purpose of preventing alarm to other residents from the open display of weapons. Both agreed that such a purpose was valid and they agreed with it. Of course, this point was repeatedly made throughout the briefing.

The following examples are included in Defendants Opening Brief, dated February 21, 2011, D.I. 89.

Pages 4-5:

Testimony of the Board members shows that WHA was concerned for the safety and welfare of residents because of the risk of accidental or intentional shootings and the alarm caused to other residents from having weapons displayed in the community room.

Pages 7-8:

Doe explained, however, that she would not want to carry a weapon openly in the common areas, nor would she want other residents to do so. She also testified to one of the concerns that led the WHA Board to adopt the policy, agreeing that the visible presence of firearms in a community room would likely alarm other residents.

Page 16:

Moreover, it is in these [common] areas that the very presence of a gun is most likely to alarm residents and guests, such as grand children.

See also, Defendants' Answering Brief, dated March 25, 2011, D.I. 101; at page 14.

Of course, the policy itself specifically prohibits "display" of weapons in the common areas, with the noted exceptions. Further, Plaintiffs were so concerned about Defendants' argument that Jane Doe lacked standing because she *agreed* with the restriction on the open display of firearms in common areas because of the alarm it would cause other residents, that they submitted a sham affidavit in an effort to bolster their standing argument. In short, there is no basis for Plaintiffs' claim that Defendants' have raised a new argument.

Plaintiffs assertions, above, regarding Plaintiff Doe's testimony are inaccurate. The Court has the deposition transcript and video tape and can determine the import of her testimony. Given the record, Plaintiffs assertion that they were not fully aware that one purpose of WHA's policy is to prevent open display of weapons in common areas (with the noted exceptions) strains credulity.

Fourth, Plaintiffs alleged that WHA has somehow "defeated" its standing argument based on the fact that there is no law restricting open carry of weapons. This contention is also unsupported



The Honorable Leonard P. Stark
July 22, 2011
Page 6

by the record. In connection with the standing issues, Defendants' briefing makes clear that the standing issue is based on Jane Doe's testimony that she supported restrictions on the public display of weapons. Her only problem with the policy was that she wanted to carry a concealed weapon even though she does not have, and has never applied for, a license to carry a concealed deadly weapon.

Accordingly, Defendants believe that counsel's statement at argument correctly set forth the lack of restriction on "open carry" in Delaware and that the lack of such regulation, along with the other reasons advanced in the briefing, demonstrates the need for reasonable time, place, and manner restrictions on firearms as provided in WHA's policy.

\*           \*           \*           \*

Counsel are available should Your Honor have additional questions.

Respectfully,

/s/ *Francis G.X. Pileggi, Esq.*
Francis G.X. Pileggi, Esq.
(DE Bar No. 2624)
*Counsel for Plaintiffs*

/s/ *Barry M. Willoughby, Esq.*
Barry M. Willoughby, Esq.
(DE Bar No. 1016)
*Counsel for Defendants*

cc:   Lauren Moak, Esquire
       Jill Agro, Esquire